Lucy E. MERCER and Ruth Havens, Individually and On Behalf of All Those Similarly Situated

v.

Bruce Lee BIRCHMAN, Administrative Law Judge, Department of Health, Education and Welfare, and Richard S. Schweiker, Secretary of Health and Human Services.

No. H–78–71.

United States District Court, D. Connecticut.

March 5, 1981.

Judith Stein Hulin, Charles C. Hulin, Norman K. Janes, Douglas M. Crockett, Connecticut Legal Services, Willimantic, Conn., for plaintiffs.

Frank Santoro, Asst. U. S. Atty., Richard Blumenthal, U. S. Atty., New Haven, Conn., for defendants.

RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND SUA SPONTE ORDER OF DISMISSAL

CLARIE, Chief Judge.

In 1978 the named plaintiff, Lucy E. Mercer, and the intervening plaintiff, Ruth Havens, brought this class action against the administrative law judges who first heard their medicare claims and against the Secretary of what was then called the Department of Health, Education, and Welfare, ("the Secretary") alleging that the medicare claims procedure denied them a reasonable opportunity to be heard, in violation of the due process and equal protection provisions of the Constitution and in violation of applicable federal statutes and regulations. A class was certified, intervention was allowed, a motion to dismiss was denied, discovery proceeded, and the plaintiffs have now moved for summary judgment. The Court finds that judicial action was initially improvidently granted in that the Court does not have jurisdiction over this case, because the plaintiffs did not exhaust the administrative remedies available to them prior to the inception of the action. Consequently, the Plaintiffs' Motion for Summary Judgment is denied and the suit is dismissed.

*Facts*

During late 1976 and early 1977, Lucy E. Mercer was confined to the Valley View Convalescent Center in Willimantic, Connecticut. After her release from the Center, she filed a claim for medicare benefits covering her stay there and it was denied; she appealed the denial. The appeal was assigned to the defendant Birchman, an administrative law judge in the Department of Health, Education, and Welfare.[1] A hearing on said claim was set for December 7, 1977, in Providence, Rhode Island, a location 45 miles away and in an adjoining state. That hearing was held, and on April 7, 1978, Judge Birchman denied the claim for medicare benefits. That decision was appealed to the Appeals Council and the case was remanded for a new hearing.[2] Thereafter, a different administrative law judge granted Mrs. Mercer's claim.

Prior to and at the original hearing on December 7, 1977, before Judge Birchman, Mrs. Mercer's representatives made several requests that allegedly were denied. Among these were some that related to the scheduling of the hearing at a time and place more convenient to Mrs. Mercer, so that she could personally appear to present her testimony, and some that related to the availability of copies of the proposed exhibits pertaining to the hearing.[3] When these and other requests were denied, Mrs. Mer-

1. On November 28, 1978, Judge Birchman left the Department of Health, Education and Welfare to become an administrative law judge in the *Federal Energy Regulatory Commission. See* Judge Birchman's April 23, 1977, Response to Interrogatories, at 1.

2. In its Order of Remand of September 29, 1978, the Appeals Council took note of Mrs. Mercer's procedural claims. It also referred to the Regulations that govern the scheduling and conduct of hearings, saying that while much is left to the discretion of the administrative law judge to whom a case is assigned, "He must, however, assure that a claimant is afforded the opportunity to properly present his/her case." Order of Appeals Council, at 1. The Appeals Council in this instance, however, predicated its remand not on the "alleged procedural irregularities" in the case, Order, at 2, but on a defect in the proceedings that is not at issue in

this litigation; namely, on Judge Birchman's failure to rule on all of the issues raised by Mrs. Mercer's request for a hearing.

Nothing in the Appeals Council's order supports the plaintiffs' claim that "the Appeals Council has clearly demonstrated its unwillingness or inability to correct serious procedural deficiencies in the Appeals process," or their claim that those deficiencies had been "glaringly ignored" by the Appeals Council. Plaintiffs' Supplemental Memorandum of October 23, 1978, at 2. One should not infer from an authority's decision to remand a case on one ground that it would refuse to remand it on other grounds in proper case.

3. In his April 23, 1977, response to interrogatories, Judge Birchman said that his office did not comply with Mrs. Mercer's request for copies of the proposed exhibits because the copying machine broke down, thereby preventing the

cer's representatives refused to participate in the hearing on her claim. Shortly after that hearing, but before Judge Birchman ruled on her claim, Mrs. Mercer initiated this litigation.

Mrs. Havens, the other named plaintiff, filed a claim relating to her stay at the Rockville Memorial Nursing Home in Rockville, Connecticut, in March of 1977. In July of 1977 she requested a hearing before an administrative law judge on the denial of her medicare claim. That hearing was held before Judge Jeremiah F. McCarthy on February 22, 1978, almost two weeks after Mrs. Mercer had initiated her suit against Judge Birchman. At Mrs. Havens' hearing Judge McCarthy allegedly refused to allow her attorneys to present an oral argument in her behalf. On April 7, 1978, Judge McCarthy denied Mrs. Havens' claim for benefits, and on April 13, 1978, about two weeks before a class was certified in Mrs. Mercer's action, Mrs. Havens moved to intervene in this case. Her motion to intervene was granted on June 29, 1978. On December 14, 1978, Mrs. Havens' case was remanded with explicit instructions that oral argument was to be allowed at the hearing. That hearing apparently was held, and on January 25, 1979 a new administrative law judge granted Mrs. Havens' claim.

In the present action Mrs. Mercer alleges that Judge Birchman violated her rights in the following ways:

(1) He allegedly refused to schedule her hearing at a time and place reasonably convenient to her;

(2) He denied her an opportunity to testify at the hearing;

(3) He ruled her testimony irrelevant to his decision;

(4) Prior to the hearing he denied her representatives' request for a copy of the exhibits that would be used at the hearing;

(5) At the hearing he again denied her representatives a copy of the exhibits;

(6) He permitted only one of her representatives to participate in the meeting.

These acts, she claimed, violated Section 205 of the Social Security Act, 42 U.S.C. § 405, which requires the Secretary to provide medicare claimants with a reasonable opportunity for a hearing, the Administrative Procedure Act, 5 U.S.C. § 555 *et seq.*, and the Equal Protection and Due Process guarantees of the Fifth Amendment. She purported to represent a nationwide class of all medicare claimants who had been denied a reasonable opportunity for a hearing to appeal the denial of benefits by actions similar to those Judge Birchman had allegedly taken in regard to her claim.

The intervention of Mrs. Havens added a seventh alleged procedural abuse to the six contained in Mrs. Mercer's complaint, namely forbidding the claimant or the claimant's representative from making oral argument in support of a claim for benefits. She purported to represent a nationwide class of all medicare claimants who had been denied a chance to make an oral argument at the hearing on their claim for benefits. Both Mrs. Mercer and Mrs. Havens sought injunctive and declaratory relief that would remedy the alleged procedural abuses of which they complained.

A brief recapitulation of the sequence of events leading up to and following the filing of this action is in order here.

(1) On June 27, 1977, Mrs. Mercer submitted a timely request for a hearing on her medicare claim. Mrs. Havens submitted her request for a hearing on July 14, 1977.

(2) On November 27, 1977, Mrs. Mercer requested copies of all proposed exhibits. This request allegedly was denied.[4]

(3) On December 6, 1977, Mrs. Mercer's attorney requested that the hearing, scheduled for the next day in Providence, Rhode Island, be postponed and moved to

copying of the exhibits. Judge Birchman claimed that Mrs. Mercer's attorney did not object to his suggestion that in lieu of having a copy of the proposed exhibits, the attorney review the record in Providence prior to the hearing.

4. *See* note 3 above.

her *home town,* Windham, Connecticut. This request was denied.

(4) On December 7, 1977, the hearing on Mrs. Mercer's claim was held. As a result of several adverse procedural rulings, her representatives decided not to participate in the hearing.

(5) On February 9, 1978, Mrs. Mercer filed this action in this Court.

(6) On February 22, 1978, a hearing was held on Mrs. Havens' claim. At that hearing certain procedural abuses allegedly occurred.

(7) On April 7, 1978, Judge Birchman denied Mrs. Mercer's claim. On that day also Judge McCarthy denied Mrs. Havens' claim.

(8) On April 13, 1978, Mrs. Havens moved to intervene.

(9) On April 25, 1978, a class was certified in this case.

(10) On June 29, 1978, Mrs. Havens' motion to intervene was granted.

(11) On September 29, 1978, the Appeals Council remanded Mrs. Mercer's case. The case was assigned to Administrative Law Judge Clayton A. Dietrich.

(12) On November 2, 1978, Judge Dietrich communicated with Mrs. Mercer's representatives on the availability of copies of the exhibits and on the timing of the hearing to suit Mrs. Mercer's convenience.

(13) On November 28, 1978, Judge Birchman left the Department of Health, Education, and Welfare for employment as an administrative law judge elsewhere in the federal bureaucracy.

(14) On December 14, 1978, the Appeals Council remanded Mrs. Havens' case, with instructions on the procedure to be employed at the hearing on remand.

(15) On January 25, 1979, Mrs. Havens' claim for benefits was granted.

(16) On April 30, 1979, Mrs. Mercer's claim for benefits was granted.

### Jurisdiction

The plaintiff claims that this Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1361, and 42 U.S.C. § 405(g), as made applicable to Medicare cases by 42 U.S.C. § 1395, *et seq.* They represent that they have presented their claims for benefits to the Secretary and have received final adverse decisions from the Secretary. They note that in this Court they are not seeking benefits under the Social Security Act, but only such injunctive and declaratory relief as will remedy the procedural defects of which they complain.

The Court finds that the plaintiffs have not received final adverse decisions from the Secretary and that some measure of finality is required even as to collateral claims. The Court holds that it does not have jurisdiction over the subject matter of this case.

### Discussion of Law

The basic question raised is: what exhaustion requirements, if any, obtain in the case of a Medicare claimant who seeks relief in a federal court on a claim that is entirely collateral to his or her claim for benefits under the Social Security Act? Implicit in the plaintiffs' argument is the claim that once a party has presented a procedural request to an administrative law judge of the Social Security System and received a negative response to his request, the party is free to come into federal court seeking injunctive and declaratory relief requiring the judge in question or the Secretary to observe the procedure that the party had sought in the first instance. The plaintiffs' attempted avoidance of the exhaustion requirements of the Social Security Act in such collateral claims should not be allowed to succeed, because such avoidance would fly in the face of the relevant statutes, would be contrary to existing case law, and would frustrate the wise policies that underpin the exhaustion requirement.

In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court dealt with a question that is distinguishable from the one presented here, but the Supreme Court's reasoning in *Salfi* is helpful in determining the rationale and limits of the exhaustion requirement in

the case of complaints that are collateral to claims for benefits under the Social Security Act. *Salfi* held that 42 U.S.C. § 405(h)[5] precludes federal question jurisdiction in an action challenging the denial of a claim for benefits and provided that the only avenue for judicial review of such a claim is 42 U.S.C. § 405(g), which has an explicit exhaustion requirement built into it.[6] In that case the Court held that under § 405(g) the District Court had jurisdiction over the named plaintiffs in the case, but not over the unnamed members of the class that they represented, in that the former had fulfilled the finality requirement of Section 405(g) but the latter had not. The *Salfi* Court based its conclusion regarding the named plaintiffs, on the evident futility of further administrative proceedings and on the implicit finding of the Secretary that administrative finality had been achieved relatively early in the review process. 422 U.S. at 767, 95 S.Ct. at 2467.

It was the policies that explain exhaustion requirements generally that led the Supreme Court to read some flexibility into the apparently ironclad exhaustion requirement of Section 405(g). *Citing McKart v. United States*, 395 U.S. 185, 193–194, 89 S.Ct. 1657, 1662–1663, 23 L.Ed.2d 194 (1969), the Supreme Court expressed those considerations in the following words:

"Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." 422 U.S. at 765, 95 S.Ct. at 2467.

Since none of these objectives would have been served by requiring strict compliance with the finality procedures of the Social Security Act and of the regulations adopted pursuant thereto, the Court in *Salfi* interpreted the statute to require only the limited exhaustion that had been achieved in that case.

In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), which like this case involved a constitutional challenge that was collateral to a claim for benefits, the Supreme Court advanced the exhaustion analysis of *Salfi*. The *Eldridge* Court found that implicit in *Salfi* was the principle that the finality requirement of Section 405(g) has two elements: one element is purely jurisdictional and hence unwaivable; the other element is nonjurisdictional and therefore waivable. *See* 424 U.S. at 328, 96 S.Ct. at 899. The nonwaivable element, the Court said, is the requirement that a claim for benefits shall have been presented to the Secretary. The waivable element is the requirement that the administrative remedies prescribed by the Secretary shall have been exhausted.

Turning to Eldridge's action, the Supreme Court found that he had fulfilled the nonwaivable requirement of Section 405(g), so that the essential component of finality had been realized. As to the waivable component of the finality requirement, the Court held that the case before it was one of those cases in which it would be inappropriate to defer to the Secretary's judgment on finality, because of the overriding interest in having the procedural issue resolved promptly. The Court based this conclusion on two premises: first, that Eldridge's con-

**5.** 42 U.S.C. § 405(h) says:

"The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."

**6.** 42 U.S.C. § 405(g) says in part:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after mailing to him of notice of such decision or within such further time as the Secretary may allow . . . ."

stitutional challenge was "entirely collateral to his substantive claim of entitlement." 424 U.S. at 330, 96 S.Ct. at 900 second, that Eldridge claimed that if his constitutional challenge were not heard by the courts he would be harmed in a way that no *post factum* correction could adequately undo.

■ The lesson to be drawn from these two cases is that statutorily created finality requirements are interpreted and applied with some flexibility, however, that flexibility is not boundless. The criteria that governs a court's application of the finality requirement includes the following:

(1) Has the plaintiff presented a claim to the Secretary? If the plaintiff has not done this, then the court is without jurisdiction and the action must be dismissed.

(2) Would further proceedings within the agency be futile in that the agency is powerless or unlikely to grant the relief sought by the plaintiff?

(3) Has the Secretary waived the finality requirement by his failure to insist on the exhaustion of administrative remedies at the outset of the litigation?

(4) Is there some overriding need for prompt judicial resolution of the plaintiff's claim such that deference to the Secretary's decision not to waive a finality requirement would be inappropriate?

(5) Is the plaintiff's challenge collateral to this claim for benefits?

(6) Is it likely that irreparable injury will occur if the finality requirement is fully observed?

■ In this case the first criterion, the jurisdictional one, has been met. Mrs. Mercer did present her claim for benefits to Judge Birchman in 1977, and she presented her request to Judge Birchman for those procedures which she believed were due her and he denied them before she filed suit in February of 1978. As to the other criteria, however, Mrs. Mercer's claim does not fare so well. Only the fourth criterion, which requires a claim to be collateral to a substantive claim for benefits, has been met here. The Secretary surely has not waived the finality requirement as demonstrated by the defendants' Motion to Dismiss dated May 10, 1978, which was based primarily on the plaintiffs' failure to exhaust their administrative remedies. Finally the possibility of irreparable injury to the plaintiffs does not create the need for prompt judicial action, because here the named plaintiffs have long since received the benefits they sought, and they received those benefits after hearings at which they were provided most if not all the procedure they had sought by means of this suit.

The fundamental deficiency in the plaintiffs' jurisdictional statements in their complaints is that both Mrs. Mercer and Mrs. Havens alleged that they had presented their procedural claims to the Secretary and had received "final adverse decisions." Complaint at 3, Intervenor's Complaint at 2. While they had received adverse decisions on their procedural requests from the administrative law judges who heard their claims in the first instance, they had not at the time of filing received a final adverse decision from the Secretary.[7] Had they

---

7. Sections 404.940 and 404.951 of Title 20 of the Code of Federal Regulations deal with the finality of the decisions of presiding officers at Social Security hearings and of the decisions of the Appeals Council. The former section provides that a presiding officer's decision is final unless it is reviewed by the Appeals Council; the latter provides that if the Appeals Council accepts a request for review of a presiding officer's decision, then its decision is final unless a suit is filed pursuant to 42 U.S.C. § 405(g) or to Section 1869(b) of the Social Security Act or unless the decision is revised pursuant to 20 C.F.R. § 404.956.

In this instance the Appeals Council accepted both Mrs. Mercer's and Mrs. Havens' request for review. It then remanded their cases pursuant to 20 C.F.R. § 404.950. By accepting the requests for review, the Appeals Council prevented the administrative law judges' decisions in these two cases from becoming final.

It is worth noting that § 404.947a, which sets out the basis for review of a presiding officer's decision by the Appeals Council, explicitly provides for review both of abuses of discretion by the presiding officer and of procedural issues which may affect the general public interest. *See* 20 C.F.R. § 404.947a(a)(1) and (4). All of the actions complained of by the plaintiffs here fall into one of these two categories.

waited for a final decision of the Secretary, at least two worthy interests would have been served. The autonomy of the Social Security Administration would have been preserved in that the Administration would have been given the "opportunity to correct its own errors;" 422 U.S. at 765, 95 S.Ct. at 2467, which in *Salfi* and *McKart* the Supreme Court recommended. Secondly the efficient functioning of both the Social Security Administration and of the Courts would have been furthered.

It would be hard to find a set of facts that illustrate the wisdom of the exhaustion doctrine better than the facts of these two cases do. In both cases the agency involved demonstrated itself to be willing and able to correct the procedural abuses that allegedly stood between the claimants and the benefits they deserved. The decisive force of this fact is in no way diminished by the facts that the named plaintiffs presented themselves as class representatives or that their attorneys were willing to litigate the procedural claims of whatever class members may exist at this time. The named plaintiffs never were members of the only class that could escape the exhaustion requirement; namely, the class of those medicare claimants who had received final adverse decisions from the Secretary of their procedural claims,[8] and the willingness of attorneys to litigate a question, even though they "stand like greyhounds in the slips, straining upon the start," *Kremens v. Bartley*, 431 U.S. 119, 134, n.15, 97 S.Ct. 1709, 1717, n.15, 52 L.Ed.2d 184 (quoting Shakespeare, *Henry V.*, Act III, Scene I), does not dispense with the exhaustion re-

quirement any more than it can dispense with the requirements of Article III.

In dismissing this action the Court is not suggesting that the plaintiffs' due process arguments were unmeritorious. Indeed few principles of law are more firmly established than that the right to be heard is a fundamental ingredient of due process.[9] When an administrative agency holds a hearing at a time and place reasonably convenient to the affected party and allows that party to present his version of the facts and his response to the Government's case, the agency is serving what the Supreme Court has recently described as "two central concerns of due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decision-making process." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980).

The participation in an agency proceeding by the person directly affected by its decision is essential not only to the *accuracy* of the agency's decision, but also to the *humanity* of the process whereby it reaches its decision. People, simply because they are human, deserve their "day in court" before an agency acts on their claims. As Justice Frankfurter said a generation ago:

"The validity and moral authority of a conclusion largely depend on the mode by which it was reached. Secrecy is not congenial to truth-seeking and self-righteousness gives too slender an assurance of rightness. No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss

---

8. "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975). Neither Mrs. Mercer nor Mrs. Havens were ever a member of the class described in the text since the final decisions that they received were not adverse to their procedural claims. Furthermore, "it is generally agreed that exhaustion by at least one member of the class is a necessary prerequisite for a class action. Where not even one member of the class has either pursued an administrative remedy or shown why one of the exceptions to the exhaustion rule is applica-

ble, there is a barrier, absent unusual circumstances to the class action." *Phillips v. Klassen*, 502 F.2d 362, 369 (D.C.Cir.1974) (footnote omitted), *cert. den.* 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974).

9. "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). *See also Goldberg v. Kelly*, 397 U.S. 254, 266–271, 90 S.Ct. 1011, 1019–1022, 25 L.Ed.2d 287 (1970), and *Goss v. Lopez*, 419 U.S. 565, 579–584, 95 S.Ct. 729, 738–741, 42 L.Ed.2d 725 (1975).

notice of the case against him and an opportunity to meet it. Nor has a better way been found for generating that feeling, so important to a popular government, that justice has been done." *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 171–172, 71 S.Ct. 624, 648–649, 95 L.Ed. 817 (1951) (Frankfurter, J. concurring).

Accordingly, the Plaintiffs' Motion for Summary Judgment is denied and the action is dismissed without prejudice to the constitutional claims raised in the complaint.

SO ORDERED.