**Lucy E. MERCER and Ruth Havens, individually and on behalf of all others similarly situated, Plaintiffs-Appellants,**

v.

**Bruce Lee BIRCHMAN and Richard S. Schweiker, Secretary of the Department of Health and Human Services, Defendants-Appellees.**

No. 278, Docket 82–6142.

United States Court of Appeals, Second Circuit.

Argued Nov. 1, 1982.

Decided Feb. 9, 1983.

Judith Stein Hulin, Charles C. Hulin and William A. Dombi, Legal Assistance to Medicare Patients, Willimantic, Conn., for plaintiffs-appellants.

Clifford M. Pierce, Asst. Regional Atty., Dept. of Health and Human Services, Boston, Mass., Alan H. Nevas, U.S. Atty., D. Conn., Frank H. Santoro, Asst. U.S. Atty., New Haven, Conn., for defendants-appellees.

Before FRIENDLY, KEARSE and PRATT, Circuit Judges.

FRIENDLY, Circuit Judge:

These appeals are from orders of Chief Judge Clarie in the District Court for Connecticut, 533 F.Supp. 1234, which dismissed a claim asserted by Lucy Mercer, a recipient of benefits under title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (Medicare), individually and on behalf of a class of all individuals who have been denied a reasonable opportunity for a hearing to appeal the denial of Medicare benefits, and a claim asserted by Ruth Havens, also a recipient of Medicare benefits, as intervening plaintiff.

The cases have a long history, summarized in Judge Clarie's first opinion, 510 F.Supp. 99 (D.Conn.1981), and brought up to date in his second, 533 F.Supp. 1234 (D.Conn.1982). We will assume familiarity with these and will state only the essentials. During late 1976 and early 1977 plaintiff Mercer was confined to a convalescent center in Willimantic, Conn. Her claim for medicare benefits covering her stay there was denied by the Social Security Administration (SSA) and she took an administrative appeal. The appeal was assigned to Administrative Law Judge (ALJ) Birchman who set the hearing for Providence, R.I., some 45 miles away from Mercer's home in Windham, Conn. Mercer claims that the ALJ denied her written request for copies of proposed exhibits to be provided to her representative in advance of the hearing, denied a telephone request for postponement of the hearing to a more convenient

time and place,[1] and allowed only one of her representatives to be present at the hearing. When these and other requests were denied, Mercer's representatives, a nonprofit legal services corporation, refused to participate further in the hearing. Before the ALJ had ruled on the merits of her claim, Mercer brought this action in the District Court for Connecticut on February 9, 1978, on her own behalf and that of the class above described seeking injunctive and declaratory relief that ALJs be required to provide claimants with copies of proposed exhibits at least two weeks prior to hearings, to permit use of these copies at hearings, to schedule hearings at a time and place convenient to claimants, and to place no unreasonable restrictions on the number of representatives at claimants' hearings. Jurisdiction was sought to be predicated on 28 U.S.C. § 1331 and § 1361 and 42 U.S.C. § 405(g).[2]

Mrs. Havens' Medicare claim, which arose from a stay in a nursing home in Rockville, Conn., likewise was denied by the SSA. Havens appealed, and a hearing was set before ALJ McCarthy. Allegedly the ALJ refused to allow her attorneys, the same legal services corporation, to make an oral argument.

On April 7, 1978, ALJ Birchman denied Mercer's claim and ALJ McCarthy denied Havens' claim. The district court certified a class consisting of Mercer "and those similarly situated, namely, all individuals who have been denied a reasonable opportunity for a hearing to appeal the denial of their Medicare benefits" on April 25, and granted leave for Havens to intervene on June 29, 1978.

Both Mercer and Havens appealed the actions of the ALJs to the SSA's Appeals Council. On September 29, 1978, it remanded Mercer's case for a de novo hearing before ALJ Dietrich,[3] who communicated with Mercer's representatives on the availability of copies of the exhibits and on the timing of the hearing to suit Mercer's convenience. On December 14, 1978, the Appeals Council remanded Havens' case, on the ground that refusal to allow oral argument constituted a deprivation of due process, and instructed the ALJ to "schedule a supplemental hearing at a time and place convenient to all parties and give the claimant and/or her representative the opportunity to submit additional evidence and to present oral argument". The respective ALJs allowed Havens' claim on January 25, 1979, and Mercer's on April 30, 1979.

Although the administrative process had thus resulted in their clients' obtaining the entire monetary relief they had claimed, despite whatever errors the ALJs had made on the first round, the non-profit legal services corporation representing Mercer and Havens continued to press the action in the district court. On December 15, 1978, the judge denied the Secretary's motion to dismiss and allowed discovery. However, when plaintiffs moved for summary judgment, the judge reexamined the jurisdictional problem and found that "the Court does not have jurisdiction over this case, because the plaintiffs did not exhaust the administrative remedies available to them prior to the inception of the action." 510 F.Supp. at 100. He therefore denied plaintiffs' motion for summary judgment and dismissed the action, 510 F.Supp. 99. On appeal to this court, a panel vacated and remanded without opinion, 685 F.2d 425 (2 Cir.1981), to enable Judge Clarie to determine whether the jurisdictional issue was controlled in plaintiffs' favor by our decision in *Ellis v. Blum,* 643 F.2d 68 (2nd Cir.1981), where, on quite different facts, we had sustained jurisdiction under the

---

1. Mercer herself was unable to attend the scheduled hearing, and the ALJ proceeded in her absence. Thereupon Mercer claimed in her request for review by the SSA Appeals Council that the ALJ had denied her an opportunity to testify and had ruled her testimony irrelevant. Mercer did not press these claims in her federal district court action.

2. Jurisdiction under § 405(g) is extended to Medicare claims by 42 U.S.C. § 1395ff(b)(1).

3. ALJ Birchman had left the Department of Health, Education and Welfare, as it then was, for assignment as an ALJ in the Federal Energy Regulatory Commission.

mandamus statute, 28 U.S.C. § 1361. Judge Clarie found that the case was not controlled by *Ellis v. Blum* and adhered to his initial ruling, 533 F.Supp. 1234. On a second appeal we hold that he was right.

The starting point for modern analysis of problems such as those here presented is *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The Court there held that a district court did not have general federal question jurisdiction under 28 U.S.C. § 1331 with respect to named plaintiffs making a claim of unconstitutionality of provisions in the Social Security Act, 42 U.S.C. § 416(c)(5) and (e)(2), which defined "widow" and "child" so as to exclude surviving wives and stepchildren whose respective relationships to a deceased wage earner had subsisted for less than nine months prior to his death. This was because 42 U.S.C. § 405(h) expressly excluded resort to 28 U.S.C. § 1331 to recover under any claim arising under Title II of the Social Security Act. The Court did, however, find jurisdiction over the claims of the named plaintiffs under § 405(g), which authorizes the district courts to review any adverse "final decision" of the Secretary, despite plaintiffs' failure to resort to appellate procedures within the Department since, in light of the Secretary's lack of power to declare the challenged provisions unconstitutional, any such resort would have been futile. As to class members other than the named plaintiffs, the Court found that "the complaint is deficient in that it contains no allegations that they have even filed an application with the Secretary, much less that he has rendered any decision, final or otherwise, review of which is sought." 422 U.S. at 764, 95 S.Ct. at 2466.

*Salfi* was shortly followed by *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Eldridge had been receiving disability benefits under 42 U.S.C. § 423 but these had been terminated, without an evidentiary hearing, on the basis of improvement in his medical condition. Without seeking reconsideration to which he was entitled, Eldridge brought suit, invoking jurisdiction under § 405(g), on the sole ground, 424 U.S. at 325, 96 S.Ct. at 898, that despite applicable regulations he was entitled under *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), to an evidentiary hearing prior to termination. The Court upheld § 405(g) jurisdiction. It found implicit in *Salfi* that the central requirement of a final decision by the Secretary consisted of two elements, only one of which was "purely 'jurisdictional' in the sense that it cannot be 'waived' by the Secretary in a particular case." 424 U.S. at 328, 96 S.Ct. at 899. This was the requirement that a claim for benefits shall have been presented to the Secretary, a condition that Eldridge had fulfilled. The other, waivable, element was the "requirement that the administrative remedies prescribed by the Secretary be exhausted." *Id.* In this respect, while Eldridge's case differed from *Salfi* in that the Secretary had power to remedy the unconstitutionality of which Eldridge complained since he could provide for a predetermination hearing, the Court did not "regard this difference as significant" since "[i]t is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context." 424 U.S. at 330, 96 S.Ct. at 900. Hence, although there was no evidence of express waiver of the exhaustion requirement by the Secretary such as had been found in *Salfi*, the Court found the case to be appropriate for dispensing with the normal exhaustion requirement. Given its conclusion that jurisdiction in the district court was proper under § 405(g), the Court found "it unnecessary to consider Eldridge's contention that notwithstanding § 405(h) there was jurisdiction under the mandamus statute, 28 U.S.C. § 1361, or the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*", 424 U.S. at 332, n. 12, 96 S.Ct. at 901, n. 12. It answered the latter question in the negative in *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

In *Ellis v. Blum, supra*, 643 F.2d 68, we were required to deal with the former ques-

tion. The case involved two sets of defendants. One set consisted of state officials who were enforcing the SSA's benefit termination plan in a manner alleged to be inconsistent with the SSA Manual, the Social Security Act, and due process. The other was the Secretary who was accused of failing to enforce the manual against the state defendants. We held that the state defendants were not within the ambit of § 405(h) which prohibits actions other than under § 405(g) only against "the United States, the Secretary, or any officer or employee thereof", and that jurisdiction with respect to them could be maintained under 28 U.S.C. § 1331 in light of the amendment, made during the pendency of the appeal, which eliminated the jurisdictional amount requirement in all federal question cases, 94 Stat. 2369 (1980). We found the question of jurisdiction over the Secretary to be more difficult but concluded we need not decide issues· raised with respect to § 405(g) or § 1331 jurisdiction since there was jurisdiction in mandamus under 28 U.S.C. § 1361, a remedy which is not barred in terms by § 405(h), and which, absent any negative holding by the Supreme Court, see *Norton v. Mathews,* 427 U.S. 524, 529–30, 96 S.Ct. 2771, 2774, 49 L.Ed.2d 672 (1976); *Mathews v. Eldridge, supra,* 424 U.S. at 322 n. 12, 96 S.Ct. at 901 n. 12 (1976); *Califano v. Yamasaki,* 442 U.S. 682, 698, 99 S.Ct. 2545, 2556, 61 L.Ed.2d 176 (1979), we had sanctioned in *White v. Mathews,* 559 F.2d 852, 856 (2 Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *Barnett v. Califano,* 580 F.2d 28, 31 (2 Cir.1978); and *Sharpe v. Harris,* 621 F.2d 530, 532 (2 Cir. 1980)—all three cases relating to the dilatoriness of the Secretary in handling claims for various forms of payment. Recognizing that "[t]raditionally a writ of mandamus will not issue unless the plaintiff had exhausted administrative remedies and unless the defendant owes the plaintiff a clear duty to act", *supra,* 643 F.2d at 81, we thought *Ellis* was an appropriate case for dispensing with exhaustion, on a ground similar to that stated by Justice Powell in *Eldridge* for dispensing with exhaustion in an action under § 405(g) on the facts there before the Court, namely, that "it would be foolish to expect the Secretary in an adjudicatory administrative proceeding to remedy what plaintiff alleged to be a full-blown policy of the state defendants of issuing deficient pretermination notices." 643 F.2d at 78.[4]

■ Mercer's and Havens' claims for Medicare benefits were the paradigm of those where resort to the internal procedures of the SSA should be required. After an initial adverse determination of their claims and during the pendency of their district court action, Mercer and Havens followed the established course of administrative review. Their pursuit of administrative remedies could hardly be called futile or "foolish". Whereas Eldridge would have been asking the Secretary to change his regulations, Mercer and Havens were asking him to enforce them. As a result, not only did they receive the benefits they claimed but the procedural defaults of which they complained were acknowledged to be deviations from established agency regulations and were corrected. No question of statutory validity as in *Salfi,* no attack on the Secretary's prescribed regulations as in *Eldridge,* no conflict between the established procedures of cooperating agencies as in *Ellis v. Blum* rendered illusory the prospect of an administrative remedy for the wrongs these plaintiffs allege so as to justify resort to the courts before exhaustion.

---

4. We went on to say, *id.,* at 78–79:

Rather one would expect the Secretary simply to retract an individual incomplete notice upon its discovery. Indeed, this is precisely the policy of the Secretary as stated in argument to this court and as demonstrated by the facts of this case. Twice plaintiff received allegedly inadequate pretermination notices and twice she complained, only to have the notices retracted and a new but equally defective one issued. We see no point in requiring plaintiff further· to exhaust her administrative remedies before allowing her to litigate the question of the Secretary's duty to compel compliance with prescribed procedures.

In the year Mercer's and Havens' claims were considered, the SSA handled some 34,-900,000 Medicare bills and some 6,900,000 other claims, of which approximately 20% were initially rejected, Social Security Administration, The Year in Review: The Administration of Social Security Programs, 1978 (1980). In an enterprise of such magnitude, it is essential that the agency provide machinery for self-correction and it has done precisely that.[5] The first step, specified in 20 C.F.R. § 404.909 (1977) is a request for reconsideration. Save for cases governed by the expedited appeals process, 20 C.F.R. §§ 404.916a–916f,[6] an unsuccessful request for reconsideration is followed by a hearing before an ALJ, 20 C.F.R. § 404.917 *et seq.* and, if the result of that is adverse, a request for review by the Appeals Council, 20 C.F.R. § 404.955 *et seq.* An important purpose of review by the Appeals Council is to ferret out procedural errors by the hundreds of ALJs employed by the SSA who conduct some 215,000 hearings every year, Social Security Administration: The Year in Review, *supra.* Precisely that purpose was served here. In Havens' case the Appeals Council explicitly directed that a new hearing should be held and oral argument allowed. While the remand in Mercer's case was predicated on another ground not relevant here, the Appeals Council took note of her procedural claims and observed that, while much is left to the discretion of the ALJ, he must "assure that a claimant is afforded the opportunity to properly present his/her case", see 510 F.Supp. at 100 n. 2.

The complaint here does not attack procedures established by the Secretary, a course which, under Justice Powell's comment in *Eldridge* or our own in *Ellis,* might render futile the resort to internal remedies. The procedures are unexceptional, and we do not read the complaint as claiming otherwise. 20 C.F.R. § 404.934(a) states that:

Any party to a hearing shall have the right to appear before the presiding officer, personally or by representative, and present evidence and contentions.

Section 404.929 directs the ALJ to allow the parties or their designated representatives to question witnesses. Under § 404.923, if written notice is given by a party objecting to the time and place fixed for a hearing and "good cause" is shown, the presiding officer may fix a new time or place. As for the number of a claimant's representatives, § 404.927 provides that "[h]earings shall be open to the parties and to such other persons as the presiding officer deems necessary and proper," including, presumably, representatives without "unreasonable restrictions on [their] number" as sought in the complaint. On the issue of access to exhibits the Handbook of the Bureau of Hearings and Appeals (BHA) issued in July 1977 [7] stated that:

Each party to a hearing has (1) the right to examine proposed exhibits in the case; (2) the right to object to the inclusion in the record of any particular document; and (3) the right to submit additional relevant documentary material.

A further instruction went into greater detail as to the right to prehearing disclosure of proposed exhibits. Upon request by a claimant or representative, photocopies were to be provided free of charge if the cost did not exceed $25 or if a reasonable showing was made that a copy of the record would be necessary in the claimant's preparation for the hearing. In any event exhibits were to be made available for examination at the hearing office. Notices of hear-

---

5. The procedures for reconsideration, hearing, and appeal from denial of Medicare benefits are substantially the same as those relating to disability payments. 42 C.F.R. § 405.701.

6. This seems to have been framed to take care of the precise problem presented in *Weinberger v. Salfi, supra,* 422 U.S. at 765, 95 S.Ct. at 2466, namely, where "the only factor precluding a favorable determination . . . is a statutory pro-

vision which the individual alleges to be unconstitutional." 20 C.F.R. § 404.916a(d).

7. Mercer's request of June 27, 1977, for a hearing on her claim and Havens' similar request of July 14, 1977, brought their cases under the June 1977 version of the BHA Handbook. An earlier version giving substantially the same right to examine proposed exhibits had been in effect since July 1974.

ings advised claimants of their right to examine the exhibits before or on the day of the hearing. Whether or not the claimant made a request, the Hearing Assistant was required to meet with the claimant and/or representative just prior to commencement of the hearing, show them the proposed exhibits and, if necessary, explain these to them. Provision was also made for examination of additional exhibits submitted during or after the hearing.

Mercer's and Havens' claims in the district court related not to the Secretary's procedures but to the failure of two ALJs to apply them. These procedural deficiencies were promptly corrected as a result of action taken by the Appeals Council.[8] The complaint did not allege that the action of ALJ Birchman in denying access to exhibits and refusing to allow more than one representative of the claimant to be present at the hearing was in any way typical;[9] indeed it referred to the fact that many ALJs went to the full extent desired by plaintiff's attorney—fuller, we think, than is required, see note 8. The complaint likewise did not allege that ALJs regularly refused to grant reasonable adjournments or relocations of hearings and the intervenor's complaint said nothing about the frequency with which ALJs had denied oral argument. The discovery conducted by plaintiffs' attorneys adduced no evidence that any ALJ other than the one who handled Havens' case had denied the right to oral argument.

On the exhibits question plaintiffs did produce an affidavit of a Miami attorney that beginning in March, 1980, the Miami office of the Bureau of Hearings and Appeals had denied use of its copying machines to him and, "with few exceptions", had refused to supply copies of exhibits in advance of hearings (but not to afford access to exhibits), and an affidavit from a Youngstown, Ohio, attorney that the Cleveland office had denied requests for photostatic copies of exhibits and had instituted such a policy for all ALJ's in that office, without specifying whether or not the required fees had been tendered or a showing of good cause for waiving the fees had been made. Without conceding that abuses with respect to requests for copies of exhibits had occurred but taking note of the instant suit, the Chief ALJ, on December 16, 1980, issued a bulletin reiterating the SSA's policy relating to exhibits.

We assume, *arguendo,* that, no matter how excellent the SSA's procedures, mandamus would lie on a showing that they were not working and that there was no sufficient indication of the Secretary's intention to make them work. Such was the situation in *Ellis v. Blum,* where plaintiff had repeatedly suffered from the same grievance, an established practice of state officials whom the Secretary had engaged to assist in administering the Act, and in the *White, Burnette,* and *Sharpe* cases, all in-

8. The argument of plaintiffs' counsel that Mercer was given a copy of her record by ALJ Dietrich on remand not as a "regular practice" but as a "matter of special accommodation" takes the record out of context. The ALJ's remarks were directed not to a request to examine exhibits but to a request of the attorney that the ALJ "undertake to have the entire file xeroxed so that you may study it in the comfort of your office." This was what ALJ Dietrich characterized as "an unusual request which as you can understand is both expensive and burdensome" as to which "as a regular practice, I would have serious reservations about accommodating such requests as [a matter] of course." He then went on to say that since there had already been one hearing which was deficient or erroneous, "as a matter of special accommodation, I will have the proposed exhibits xeroxed and mailed to you after they have been selected and organized." Nothing

indicates that if the attorney had simply requested the exhibits and offered to pay the costs (or had shown that these were less than $25 or that there was good cause for not demanding payment), or if the attorney had simply requested access to the exhibits, there would have been any difficulty.

9. Plaintiffs elicited in discovery the statement of ALJ Birchman that "mechanical difficulties" with reproduction equipment at the Providence, R.I., Office of Hearings prevented his compliance with Mercer's request for copies of exhibits sent prior to the hearing. Instead, Birchman proposed to permit her representative to review the record in Providence immediately before the scheduled hearing and subsequent to the hearing did procure and send to her representative a photocopy of the exhibits for comments.

volving interminable delay in the handling of claims by ALJ's, on which we relied in *Ellis*.[10] These cases are quite different from what was presented here.

In sum, all that the papers before Judge Clarie revealed was that in a few instances the eminently fair procedures set up by the Secretary with respect to exhibits had broken down, that in one instance an ALJ had wrongly denied a request for oral argument and in another an ALJ had wrongly denied a request to allow a paralegal to be present, and that all these defects had been corrected by exhaustion of internal remedies, as plaintiffs had every reason to believe they would be before they brought this suit. This affords no basis for an action for mandamus under 28 U.S.C. § 1361. It has never been expected that an organization so vast as the Social Security Administration can achieve absolute procedural perfection. As the Supreme Court noted in *Richardson v. Perales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971):

> The system's administrative structure and procedures, with essential determinations numbering into the millions, are of a size and extent difficult to comprehend. But, as the Government's brief here accurately pronounces, "Such a system must be fair—and it must work."

Congress has emphasized "the informal rather than the formal . . . so long as the procedures are fundamentally fair." 402 U.S. at 400–01, 91 S.Ct. at 1426–27. The efforts of the Secretary—more accurately of the hundreds of conscientious ALJs and members of Appeals Councils—to reconcile the demands of claimants with protection of the fisc would not be facilitated by the courts' encouraging a drumfire of mandamus actions whenever an ALJ slips into procedural error correctable by the SSA's internal procedure.

■ Although this suffices to dispose of the case we add a word on the class certification. Our concern is not merely over certification of a nationwide class when the court had nothing save two isolated instances in Connecticut before it, see *Califano v. Yamasaki,* 442 U.S. 682, 702–03, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979), but over the breadth with which the class was delineated. This was not limited to persons who had experienced the difficulties encountered by Mrs. Mercer and Mrs. Havens but included "all individuals who have been denied a reasonable opportunity for a hearing to appeal the denial of their Medicare benefits." We do not see how the court could have found that a class so comprehensively defined met the requirements of F.R.Civ.P. 23(a)(2), (3) and (4). We likewise do not understand what effect a judgment in a case where the claims of the named plaintiffs were so limited could have on entirely different claims of other persons included in the definition of the class or what benefit a successful defendant could draw from it. We would urge district courts to be circumspect before issuing class action certifications like the one in this case even when there is no opposition.[11]

Affirmed.

---

**10.** The other cases mentioned in *Ellis* as grounded on mandamus jurisdiction, 643 F.2d at 78, all differ from the present case in seeking the requirement of an evidentiary hearing where under the regulation none had been required before, prior to some total, partial, or temporary loss of social security benefits. *Martinez v. Richardson,* 472 F.2d 1121 (10 Cir. 1973) (seeking hearing prior to termination of medicare benefits); *Knuckles v. Weinberger,* 511 F.2d 1221 (9 Cir.1975) (seeking hearing prior to suspension of social security payments); *Frost v. Weinberger,* 515 F.2d 57 (2 Cir.1975) (seeking hearing prior to reduction of survivors' benefits), *cert. denied,* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976); *Ryan v. Shea,* 525 F.2d 268 (10 Cir.1975) (seeking hearing prior to termination of disability benefits in transition from state to federal program); *Elliott v. Weinberger,* 564 F.2d 1219 (9 Cir.1977) (seeking hearing prior to recoupment of payments allegedly in excess of entitlement), *aff'd in part on other grounds sub nom. Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). They thus either anticipated or followed *Mathews v. Eldridge, supra,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, which we have distinguished above.

**11.** Here, absent the class certification, the complaint would seemingly have had to be dismissed as moot once Mrs. Mercer and Mrs. Havens received their awards early in 1979 since it would be hard to show that as to them the situation was "capable of repetition, yet evading review", *Southern Pacific Terminal Co.*

v. *ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 398, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980). Two decisions by the district court and two by this court could have thus been avoided.