MENTAL HEALTH ASSOCIATION OF MINNESOTA, and H.C., K.F., J.M., and C.A., on behalf of themselves and others similarly situated, Appellees,

v.

Margaret M. HECKLER, Secretary of the United States Department of Health and Human Services, Appellant.

No. 83–1263.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1983.

Decided Nov. 4, 1983.

James M. Rosenbaum, U.S. Atty., Mary L. Egan, Asst. U.S. Atty., Minneapolis, Minn., Donald A. Gonya, Asst. Gen. Counsel, Dept. of Health and Human Services, Randolph W. Gaines, Deputy Asst. Gen. Counsel for Litigation, A. George Lowe, Chief, Disability Litigation Branch, Gabriel L. Imperato, Social Security Division Dept. of Health and Human Services, Baltimore, Md., for appellant.

Mark A. Bohnhorst, Litigation Coordinator, Martha A. Eaves, Southern Minnesota Regional Legal Services, Inc., St. Paul, Minn., William Messinger, Messinger, Cooper & Norton, Minneapolis, Minn., for Mental Health Association of Minnesota, Leonard S. Rubenstein, Jane Bloom Yohalem, Mental Health Law Project, Washington, D.C., Co-Counsel, for appellees.

Anthony Celebrezze, Jr., Atty. Gen., State of Ohio, Columbus, Ohio, Frank J. Kelley, Atty. Gen., State of Mich., Lansing, Mich., Hubert H. Humphrey III, Atty. Gen., State of Minn., P. Kenneth Kohnstamm, Sp. Asst. Atty. Gen., St. Paul, Minn., amici curiae for appellees.

Before LAY, Chief Judge, SWYGERT,[*] Senior Circuit Judge, and ARNOLD, Circuit Judge.

LAY, Chief Judge.

The Secretary of Health and Human Services appeals from the district court order[1] granting the plaintiffs' motion for a preliminary injunction. The underlying dispute before the district court is a class action challenging the procedure used by the Secretary in disability determinations of

---

[*] The Honorable Luther M. Swygert, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

1. *Mental Health Ass'n of Minn. v. Schweiker,* 554 F.Supp. 157 (D.Minn.1982), the Honorable Earl R. Larson, Senior District Judge, presiding.

the severely mentally ill in Region V.[2] *See* 42 U.S.C. §§ 401–431 (1976 & Supp. V 1981) (Social Security Disability Insurance (SSDI) benefits for disabled workers; 42 U.S.C. §§ 1381–1383 (1976 & Supp. V 1981) (Supplemental Security Income (SSI) for the Aged, Blind, and Disabled).[3] The plaintiffs contend that the substantive standards employed by the Secretary in disability determinations did not comply with the relevant statutory and regulatory procedures.

In issuing the preliminary injunction, the district court enjoined the Secretary from employing a presumption that an individual whose mental impairment is not as severe as those contained in the Listing of Impairments[4] is capable of performing at least unskilled work. Additionally, the Order required the Secretary *inter alia* to review the claims of all class members whose claims were denied or whose benefits were terminated on or after March 1, 1981. Moreover, in making disability determinations, the Secretary is required to accord "substantial consideration" to information from treating sources. Additionally, the court ordered reinstatement of benefits pending review for those claimants whose benefits were so terminated. 554 F.Supp. at 168–69; *see also Mental Health Ass'n of Minn. v. Heckler,* Supplemental Orders Feb. 11, 1983 and Mar. 31, 1983 (D.Minn). On appeal,[5] the Secretary challenges the district court's jurisdiction as well as the propriety and scope of the relief awarded. We affirm the pre-liminary injunction issued by the district court with the modifications specified below.

The relevant statute establishes guidelines for disability determinations and delegates to the Secretary the duty to promulgate implementing regulations.[6] Accordingly, the regulations provide a five-step sequential evaluation process, through which benefit claims are funneled. First, the Secretary determines whether an individual is engaged in "substantial gainful activity"; if so, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b) (1981). If not, the Secretary determines whether the claimant's medical condition or impairment is "severe"; if found "not severe," benefits are denied. *Id.* §§ 404.1520(c), 404.1521, 416.920(c). Third, the Secretary determines whether the claimant suffers from an impairment acknowledged to be so severe that the claimant is presumed to be incapable of pursuing any gainful activity. If so, then the claimant meets or equals the Listing of Impairments and benefits are awarded. *Id.* §§ 404.1520(d), 416.920(d); *see* "Listing of Impairments," *supra.* However, if the claimant's impairment does not satisfy the Listing of Impairments, the fourth step requires the Secretary to determine whether the individual has a sufficient "residual functional capacity" (RFC) to perform his former work. If so, benefits are denied. *Id.* § 404.1520(e); *see id.* § 404.1545(c). If

---

**2.** Plaintiffs are individuals and a mental health association suing on behalf of a class defined and certified by the district court as:

> [S]everely mentally ill individuals [from 18–49 years of age] suffering from psychotic or functional non-psychotic disorders, whom defendant has determined to be not disabled under the Social Security Act, Titles II and/or XVI, on the basis that such individuals are capable of engaging in substantial gainful activity. The class consists of both those whose applications for benefits have been denied and those whose benefits have been terminated.

554 F.Supp. at 158. The district court certified the class of persons described who reside in Region V of the Department of Health and Human Services (Minnesota, Wisconsin, Illinois, Indiana, Michigan and Ohio).

**3.** The statutory standards for disability determinations under SSDI and SSI are substantially identical and will be treated together.

**4.** 20 C.F.R. § 404, subpart P, appendix 1 (1981). The Listing of Impairments is a compendium of conditions and symptoms that reflect a level of severity which the Secretary concedes is disabling without further inquiry.

**5.** The district court denied the Secretary's request for a stay of judgment pending appeal. This court granted the Secretary's motion on May 3, 1983. After oral arguments the stay was vacated on June 21, 1983. Subsequent motions by the Secretary to reinstate the stay pending appeal were denied by this court on September 28, 1983 and on November 4, 1983.

**6.** *See* 42 U.S.C. § 423(d) (1976 & Supp. V 1981).

an individual still has not been ruled ineligible for benefits, the fifth step requires the Secretary to take into account the additional considerations of age, education, and past work experience to determine whether the individual is capable of performing any other work available in the economy. *Id.* § 404.1520(f)(1).

The primary issue before the district court concerned the RFC determination made in the fourth step. An individual's RFC is derived from a comprehensive, individualized assessment of the claimant's limitations—physical and mental. *See id.* § 404.1545–.1569. On the basis of the RFC, the Secretary determines whether the individual retains the ability to perform his or her past work. The district court, however, found that in early 1980, the state DDS (Disability Determination Service) agents in Region V applied a different standard.[7] The court found that the policy prevalent in Region V was for state DDS agents to apply a *presumption* that those claimants whose mental impairments were not as severe as those in the Listing of Impairments retained a sufficient RFC to do at least unskilled work. The effect of this presumption was that mentally impaired claimants ruled ineligible for benefits under the third step were presumed ineligible under the subsequent steps, thereby bypassing the individual assessment required in the fourth level. On the basis of this finding, the district court issued its preliminary injunction.

*Jurisdiction*

A threshold question is raised concerning the district court's jurisdiction. The complaint alleges jurisdiction under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (1976 & Supp. V 1981),[8] the mandamus statute, 28 U.S.C. § 1361 (1976),[9] and the general federal question statute, 28 U.S.C. § 1331 (1976 & Supp. V 1981).

The district court did not state its jurisdictional basis; however, the court apparently relied on *Aldrich v. Schweiker,* 555 F.Supp. 1080 (D.Vt.1982). In *Aldrich,* plaintiffs brought a class action alleging that the defendant's regulations, policies, and practices used in disability determinations did not comport with the Social Security Act. The court asserted section 205(g) jurisdiction over the plaintiffs who had filed claims with the Secretary and mandamus jurisdiction over those claimants who had pursued their administrative remedies and currently were receiving benefits. *See also Schisler v. Schweiker,* Civ. 80–572E (W.D.N.Y. Aug. 11, 1981) (mandamus jurisdiction). We conclude jurisdiction exists

---

7. The DDS is a state agency; however, it conducts the disability evaluations on behalf of the federal government and is held accountable for compliance with relevant federal laws. *Cf.* 20 C.F.R. § 404.1640–1694 (1981); 554 F.Supp. at 163–65.

8. The scheme of judicial review of the Secretary's decisions is provided in sections 205(g) and 205(h) of the Social Security Act. Section 205(g) mandates an exhaustion predicate to judicial review:

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g) (1976 & Supp. V 1981). In turn, section 205(h) establishes the exclusivity of the Act as a jurisdictional basis for review of the Secretary's actions:

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under sections 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h) (1976).

9. The mandamus statute was added by the Mandamus and Venue Act of 1962. It provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (1976).

under either section 205(g) or the mandamus statute.[10]

It is now well established that section 205(g) imposes two jurisdictional prerequisites to review of a claim arising under the Social Security Act. The first is non-waivable and requires that the individual have presented a claim to the Secretary. As the plaintiffs assert, this requires an application for benefits; or, in the case of someone who had been receiving benefits and was terminated, it requires notification to the agency that the claimant still asserts disability. *Mathews v. Eldridge,* 424 U.S. 319, 329, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976); *cf. Weinberger v. Salfi,* 422 U.S. 749, 763, 95 S.Ct. 2457, 2465–66, 45 L.Ed.2d 522 (1975) (no jurisdiction over those who had not applied for benefits); *Mathews v. Diaz,* 426 U.S. 67, 72, 76, 96 S.Ct. 1883, 1887–88, 1889–90, 48 L.Ed.2d 478 (1976) (jurisdiction extended to claimant who had filed application after case had been filed). *See also Kuehner v. Schweiker,* 717 F.2d 813 (3d Cir.1983); *Jones v. Califano,* 576 F.2d 12, 18 (2d Cir.1978) ("It is undisputed that [plaintiffs], by filing claims with the SSA, have satisfied the non-waivable requirement."). Here the Secretary apparently concedes that the named plaintiffs have met this threshold requirement. The Secretary, however, urges that plaintiffs have failed to establish the second jurisdictional requirement of section 205(g).

■ Section 205(g) also predicates jurisdiction on an exhaustion of administrative remedies: review is limited to a *"final* decision of the Secretary made after a hearing to which he was a party." 42 U.S.C. § 405(g) (1976 & Supp. V 1981) (emphasis added). Whereas the first jurisdictional requirement is nonwaivable, the second can be waived by either the Secretary or the courts. *Mathews v. Diaz,* 426 U.S. at 75–77, 96 S.Ct. at 1889–1890 (1976); *see also Eldridge,* 424 U.S. at 328, 330, 96 S.Ct. at 899, 900; *Jensen v. Schweiker,* 709 F.2d 1227 (8th Cir.1983). Here the fundamental question is whether this was an appropriate case for the district court to waive the exhaustion requirement and assert jurisdiction under section 205(g).

The Supreme Court has taken a rather pragmatic approach to statutory finality requirements. The prevailing rule of construction is that crucial collateral claims should not be lost and that irreparable harm should be avoided.[11] In *Eldridge* the Court recognized that a judicial waiver of the exhaustion requirement was appropriate "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judg-

---

**10.** Plaintiffs also assert that the procedural irregularity under attack raises a substantial question of denial of due process. They contend that § 1331 also is an appropriate jurisdictional basis for review of this collateral constitutional claim. *See St. Louis Univ. v. Blue Cross Hosp. Serv.,* 537 F.2d 283, 291–93 (8th Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976). However, a subsequent case, *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), militates against this jurisdictional basis because of the Court's decision to route even the substantial constitutional question through § 205(g). *Id.* at 327, 96 S.Ct. at 899 (1976). Similarly, in *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) the Court again fortified its predilection to route judicial review of federal administrative action through the scheme provided by the Social Security Act. *Id.* (§ 10 of APA is not an independent basis of judicial review of Secretary's decision not to reopen a previously adjudicated claim for Social Security benefits). However, at issue in *Sanders* was

a petition to reopen a final decision and the Court noted that review of constitutional challenges may not be so circumscribed. *Id.* at 109, 97 S.Ct. at 986. In view of our holding we need not pass on this jurisdiction claim.

**11.** In *Eldridge,* the Court stated:

Decisions in different contexts have emphasized that the nature of the claim being asserted and the consequences of deferment of judicial review are important factors in determining whether a statutory requirement of finality has been satisfied. . . . [Despite variant policy considerations in the different contexts,] the core principle that statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered remains applicable.

*Mathews v. Eldridge,* 424 U.S. 319, 331 n. 11, 96 S.Ct. 893, 901 n. 11, 47 L.Ed.2d 18 (1976) (citations omitted).

ment is inappropriate." *Id.* 424 U.S. at 330, 96 S.Ct. at 900. This is such a case.[12]

■ First, the claimants have a strong interest in judicial review at this juncture. We reach this conclusion with recognition of the district court's finding that 80% of the claimants who appealed their terminations had their benefits reinstated. Despite the apparent redress through available administrative avenues, we find individual exhaustion an unnecessary and unsatisfactory resolution in this particular case. Indeed, the district court found exhaustion could result in potentially irreparable harm. As Judge Larson observed:

> [C]lass members who have been denied benefits or have had benefits terminated have suffered serious harms such as deterioration of their medical conditions, disruption of physician-patient relationships, inability to pay for essential medications, and agitation and extreme anxiety associated with attempting to pursue the administrative process. These harms concern the very medical condition on account of which benefits were awarded or are sought. These harms are not recompensable through a retroactive award of benefits.

554 F.Supp. at 166. Moreover, the finding of potentially irreparable harm through the mere pursuit of administrative remedies is exacerbated by the district court's further finding that the claimants' suffering is not recompensable through a retroactive award of benefits. *Id.* Additionally, the court found that the very mental impairments forming the basis of the plaintiffs' disability claims often render them incapable of comprehending or effectively utilizing their appeal rights. *Id.*[13] In the instant case, the irreparable harm inherent in the pursuit of administrative relief and the apparent inadequacy of it to redress the interests of this particular class are not alleviated but rather are exacerbated by the high reversal rate on appeal. To be sure, the appellate reversal rate is not determinative; however, it fortifies our decision to waive exhaustion in light of the potentially irreparable harm incurred by the plaintiffs as a result of this procedural irregularity.

Similarly, in this case deference to the agency appears both unnecessary and inappropriate. The district court found that the Secretary had taken a final, but erroneous, position on a question of procedural regularity.[14] Accordingly, although exhaustion may vindicate an individual claimant's interest, it is not likely to further distill agency policy. Consequently, waiving exhaustion would not interfere prematurely with

---

**12.** *See, e.g., Kuehner v. Schweiker,* 717 F.2d 813 (3d Cir.1983); *Jensen v. Schweiker,* 709 F.2d 1227 (8th Cir.1983) (despite no exhaustion, jurisdiction asserted under § 205(g); exhaustion waived because claim was collateral to the substantive claim for benefits and raised a colorable constitutional claim); *Jones v. Califano,* 576 F.2d 12 (2d Cir.1978) (§ 205(g) jurisdiction to review Secretary's method of determining benefits; exhaustion waived because futile in light of the "final position" by Secretary and the possibility of repeated reversals on appeal frustrating review of the constitutional issue); *Caswell v. Califano,* 583 F.2d 9, 14 (1st Cir.1978) (§ 205(g) jurisdiction to review constitutional and statutory challenges to delays in administrative hearing process); *Wright v. Califano,* 587 F.2d 345 (7th Cir.1978) (same); *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333 (3d Cir.1977) (§ 205(g) jurisdiction to review statutory challenge to Secretary's formula for benefit determination; exhaustion waived because Secretary's *position* was final and despite the eventual need for individual calcula-

tions, the common legal issue was amenable to review and would avoid a multiplicity of suits and potential irreparable injury due to delays).

**13.** At oral argument, it was asserted that only 40% of the class members pursue their administrative remedies. In those cases that are appealed the district court found there was an 80% reversal rate. 554 F.Supp. at 166.

**14.** The existence of the policy was established by the Secretary's own documents, agents and witnesses. For example, the Regional Office issued a memorandum to the six state agencies responsible for eligibility decisions, which stated that, for a person whose impairment did not meet or equal the listings, "it is expected that the individual would at least retain the mental capacity for unskilled work." *Plaintiff's Exh. 23,* State Agency Memorandum 81–8. Moreover, the Ohio claims manual reiterated this policy and concluded, "a finding of disability on a medical vocational basis cannot be made for younger individuals." *See Plaintiff's Exh. 11.*

agency procedure.[15] Moreover, administrative review apparently consists of a thorough reconsideration of the claim; therefore, reversals of the initial denials are based on the facts. Consequently, the procedural irregularity, which the district court found affected the initial denial, remains unaddressed despite exhaustion and despite an individual vindication.[16] The fortuity of individual recompense should not result in evasion of review of a collateral procedural issue. *See Jones v. Califano,* 576 F.2d at 20; *cf. Mathews v. Eldridge,* 424 U.S. at 330–31, 96 S.Ct. at 900–01. Accordingly, judicial review at this juncture serves our interest in the effective, efficient administration of justice and does not impinge unduly on the Secretary's properly delegated authority. *See Weinberger v. Salfi,* 422 U.S. at 765–66, 95 S.Ct. at 2466–67.

Finally, deference to the agency is inappropriate in light of the presumption's effect on federal mental health policy. The presumption preempts the thorough evaluation of claims intended by the statutes and regulations. The result is less complete benefit distribution than intended. With due regard for the policy militating against judicial interference with agency procedures, *see infra,* in the instant case it is the Secretary who is frustrating the congressional intent. Her policy is inconsistent with the statutory mandate and it thwarts realization of the congressional policy underlying the statute. The judicial action here is intended to remedy this.

For these reasons, we find the plaintiffs have adequately presented their claims to the agency. Judicial review at this juncture also will avoid potentially irreparable harm and avoid the inefficiency of mass exhaustion. We hold a judicial waiver of the exhaustion requirement was appropriate.[17]

15. "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise and to compile a record which is adequate for judicial review." *Weinberger v. Salfi,* 422 U.S. at 765, 95 S.Ct. at 2467.

16. Because the plaintiffs are asking for enforcement of the Secretary's regulations, it could be a claim eminently suitable to the exhaustion mandate. *See Mercer v. Birchman,* 700 F.2d 828 (2d Cir.1983). Addressing the impropriety of mandamus review, the court in *Mercer* noted the vindication afforded the plaintiffs through administrative channels. (For purposes of discussion, we find the finality requirement of section 205(g) similar to the lack-of-adequate remedies prerequisite to mandamus relief.) However, there are critical distinctions between the facts of the case at bar and those presented to the Second Circuit in *Mercer.* Here we are presented with an established policy, not an aberrational deviation from agency procedure. Moreover, the irregularity is not even addressed on appeal, whereas in *Mercer* the deviation was rectified.

17. Finding jurisdiction under section 205(g) obviates the need for an extended discussion of jurisdiction under the All Writs Act. However, we conclude that the facts presented an appropriate situation for the assertion of mandamus jurisdiction. We do so largely on the strength of the reasoning by our sister circuit in *Ellis v. Blum,* 643 F.2d 68, 78–82 (2d Cir.1981) (Friendly, J.) (mandamus jurisdiction to review state policy allegedly conflicting with federal regulations). *See also Ringer v. Schweiker,* 697 F.2d 1291 (9th Cir.1982), *cert. granted sub nom. Heckler v. Ringer,* —— U.S. ——, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983); *Dietsch v. Schweiker,* 700 F.2d 865 (2d Cir.1983) (mandamus jurisdiction over challenge to Secretary's procedures); *Elliott v. Weinberger,* 564 F.2d 1219, 1225–27 (9th Cir.1977), *aff'd in part on other grounds sub nom. Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) (mandamus jurisdiction where claim raised constitutional issues collateral to substantive benefits and involved no discretion of Secretary); *Ryan v. Shea,* 525 F.2d 268, 271–72 (10th Cir.1975) (mandamus jurisdiction to review collateral, constitutional issue); *Kennedy v. Harris,* 87 F.R.D. 372 (S.D.Cal.1980); *cf. Mercer v. Birchman,* 700 F.2d 828 (2d Cir.1983) (court denied mandamus relief to claimants alleging denial of their right to be heard; however, lack of jurisdiction was not premised on preclusive effect of § 205(h) but because *facts* did not support use of extraordinary writ, exhaustion *not* futile, procedural defects were *acknowledged* to be aberrational and ultimately were corrected on appeal, as claimants had reason to believe they would be when they filed suit); *Smith & Doe v. Schweiker,* Civ. No. 79–244 (D.Vt. July 29, 1982 & Sept. 1, 1982) (challenging Vermont method of determining current disability, plaintiffs asserted a constitu-

*The Preliminary Injunction*

The Secretary vigorously contests the propriety and scope of the injunctive relief ordered by the district court. We find that, in granting the plaintiffs' motion for a preliminary injunction, the district court properly concluded that there was a substantial probability that the alleged procedural irregularity violated the relevant law and thus that plaintiffs were likely to prevail at trial.

Based upon the record, there can be little dispute that the issues raised by the plaintiffs concern substantial legal questions that justify litigation as well as action by the court to protect and preserve the interests at stake. *See Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109 (8th Cir.1981) (en banc). Additionally, the district court assessed the potential for irreparable harm to the plaintiffs were no action to be taken and found this harm and injury would have outweighed any countervailing financial or administrative burden put on the Secretary. Finally, the district court determined that issuance of the injunction was in the public interest. We find the evidence in the record supports the district court's ruling.

The Secretary challenges the court's jurisdiction to order readjudication of *all* class member claims without regard to whether an error in fact had been made in the initial determination. Similarly, she asserts that the prospective reinstatement of benefits pending review for those class members whose benefits were terminated violates the principles of sovereign immunity.

■ We are well aware that in formulating equitable relief the courts must proceed gingerly and not encroach on traditional administrative practices. *See, e.g., Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 1470–71, 67 L.Ed.2d 685 (1980); *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978); *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947); *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). However, once jurisdiction is established courts maintain the authority to provide equitable relief commensurate to the harm. *See Califano v. Yamasaki,* 442 U.S. 682, 704, 99 S.Ct. 2545, 2559, 61 L.Ed.2d 176 (1979). Bearing these principles in mind, we conclude that the prospective award of reinstated benefits pending review was proper and, with the modifications to be discussed, was within the court's jurisdiction.[18]

■ The district court order merely reinstates certain plaintiffs to their former position; it does not extend a new benefit to those plaintiffs who merely had applied for benefits. Three thousand persons apparently are eligible for interim benefits, and it is reasonably estimated that 70% of these claimants will have their benefits reinstated upon reevaluation in compliance with the

tional right to have "medical improvements" be a factor; court denied mandamus relief because plaintiffs had not exhausted their administrative remedies, nor was case appropriate for waiver; claim was not collateral to benefits claim; exhaustion was not futile; damages not potentially irreparable). In essence, plaintiffs allege that a factual determination, required by law to be made, has been supplanted by a presumption. A writ of mandamus would not rule on the outcome of the factual determination, but merely would compel the same to be made lawfully. Thus the claim raised is procedural in nature and the order would not infringe the Secretary's duly delegated authority to make the eligibility determinations.

**18.** The Secretary contends the award of benefits is impermissible because § 205(i), 42 U.S.C.

§ 405(i) (1976) predicates payment on a final determination by the agency or a court of competent jurisdiction. This position has been rejected. *See Belles v. Schweiker,* 720 F.2d 509, (8th Cir.1983); *see also Day v. Schweiker,* 685 F.2d 19 (2d Cir.1982), *cert. granted sub nom. Heckler v. Day,* — U.S. —, 103 S.Ct. 1873, 76 L.Ed.2d 806 (1983) on the grounds that the limitation in § 205(i) is geared toward the usual benefit claim situation. In situations such as here, where a procedural irregularity has been found to have affected the termination, the court retains its usual remedial powers and remedial payments are not precluded. We also note the effect of a recent amendment to the Social Security Act, 42 U.S.C. § 423 *as amended by* Pub.L. No. 97–455, 96 Stat. 2498 (continued benefits for Title II beneficiaries pending appeal).

district court order. These plaintiffs clearly had a statutory entitlement, of which, the district court found, they were deprived without a legitimate termination process. For these 3000 cases the Secretary has not met her burden of overcoming the presumption of eligibility present in cessation cases. Consequently, the scope of the order appears justified and not beyond the district court's jurisdiction.[19] *See Milliken v. Bradley,* 433 U.S. 267, 282, 97 S.Ct. 2749, 2758, 53 L.Ed.2d 745 (1977). The district court also concluded the plaintiffs had due process rights at issue. *Cf. Davis v. Passman,* 442 U.S. 228, 246, 99 S.Ct. 2264, 2277, 60 L.Ed.2d 846 (1979) (compensatory damages can be awarded where constitutional violations are alleged). The resultant order of reinstatement of benefits pending a proper adjudication is a restoration of the status quo. Although the order is mandatory, we find it is a sound exercise of judicial discretion. *Cf. Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (upheld extensive mandatory injunctive relief for national class of plaintiffs). Additionally, although it does require disbursement from the public fund, it appears to be "payment . . . as a neces-

sary consequence of compliance *in the future* with a substantive federal-question determination." *Milliken v. Bradley,* 433 U.S. at 289, 97 S.Ct. at 2762 (quoting *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974)). *See Chu Drua Cha v. Noot,* 696 F.2d 594 (8th Cir.1982); *Johnson v. Mathews,* 539 F.2d 1111 (8th Cir.1976).

In light of these strictures, we find it necessary to modify the preliminary injunctive relief to tailor the remedial effect of the order more precisely to the alleged procedural irregularity. The plaintiffs had a statutory entitlement to the use of a particular procedural format in the evaluation of their disability claims. Accordingly, the Secretary has the burden of identifying class members whose benefits were denied or terminated on or after March 1, 1981 and before or on January 4, 1983. However, the alleged procedural irregularity is the application of a presumption that the claimants whose mental impairment is not as severe as those contained in the Listing of Impairments, *supra,* retain a sufficient residual functional capacity to engage in substantial

---

**19.** The Secretary contends that the recent orders of the Supreme Court in *Heckler v. Lopez,* —— U.S. ——, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983) support reversal of the injunctive relief awarded here. At issue in *Lopez* is the non-acquiescence of the Secretary to the Ninth Circuit's view of what the Social Security Act requires with regard to the necessity of presenting evidence of medical improvement prior to the termination of disability benefits. The Ninth Circuit refused to stay pending appeal injunctive relief reinstating benefits for those claimants who upon notification by the Secretary filed a statement stating they did not believe their medical condition had improved. 713 F.2d 1432 (9th Cir.1983). Justice Rehnquist, however, stayed this injunctive relief, *Heckler v. Lopez,* —— U.S. ——, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983) (Rehnquist, J., in chambers). In a 5–4 decision, the full Court subsequently refused to vacate that stay. No. A–145 (Oct. 11, 1983). Our case is distinguishable from *Lopez* both in procedural posture and in the scope of the injunctive relief approved. Whereas *Lopez* involved requests for a stay pending appeal, here after full development of the issues, we are affirming the injunctive relief ordered by the district court. Substantively the Court in *Lopez* was concerned primarily

with the vast scope of the injunctive relief awarded to a very large class. Class members could obtain reinstated benefits merely by filing a subjective statement stating that their medical condition had not improved. In contrast, reinstated benefits in the instant case are available only upon the Secretary's determination that the termination of benefits was based upon a restricted RFC determination. Moreover, the class definition here appropriately limits the relief to those who have satisfied the only non-waivable requirement of presentment of a claim. Justice Rehnquist also was concerned about satisfaction of the exhaustion requirement of § 405(g). He regarded the constitutional issue raised as insubstantial and more accurately described as merely a claim of an "insufficient evidentiary showing." However, we are presented with serious and substantial allegations of a procedure in direct conflict with the statutory mandate. We are satisfied that exhaustion of individual claims is both unnecessary and inappropriate. *See* notes 11–17 *supra* and accompanying text. We also note that the Secretary has not raised the statute of limitations defense in her arguments concerning jurisdiction under § 405(g). Accordingly, this requirement is waived. *Weinberger v. Salfi,* 422 U.S. at 763–64, 95 S.Ct. at 2465–66.

gainful activity. By definition, it is apparent that only those class members whose benefits were terminated or denied on the basis of a restrictive RFC determination have been affected by the presumption. Those persons denied benefits, or terminated, for reasons discrete from the presumption, appear unscathed.[20] To the extent the district court order mandates review of these latter cases, the order is unjustifiably broad. Therefore, in the class refinement process it is incumbent on the Secretary to determine the basis of the denial or termination. Under our modification of the decree, readjudication as well as reinstated benefits pending such review shall be afforded only those class members whose benefits were terminated or denied on the basis of an RFC determination. It is only in those cases that the illegal presumption possibly had an effect.

On the basis of our discussion, we find paragraphs 3 and 4 of the district court Order should be modified to read as follows:

3. Defendant and her agents are hereby ordered to review on a priority basis the claims of those class members whose applications for benefits were denied on or after March 1, 1981, on the basis of an adverse determination under 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1520(f), 416.920(f) and to notify all such class members that their claim for benefits is being reviewed, that the initial denial may have been in error, that the Social Security Administration may be asking for additional evidence relating to the impairment, and that if the Social Security Administration determines that the initial denial was in error the claimant will be entitled to back benefits from the date of the application.

4. Defendant and her agents are hereby ordered to restore ongoing benefits commencing with the date of this order to all class members whose benefits were terminated on or after March 1, 1981, on the basis of an adverse RFC determination under 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1520(f), 416.920(f).

The remainder of the injunction is affirmed as issued.[21]

---

20. For example, denials based on a finding that the class-member claimant was presently engaged in "substantial gainful activity" are distinct from the alleged procedural irregularity.

21. As a final attack the Secretary contends that insofar as the district court order mandates that in the reevaluation of the claims the Secretary accord "substantial weight" to the opinions of treating physicians, it is an abdication of her delegated authority. See 42 U.S.C. § 405(a) (1976); Janka v. Secretary of Health, Education and Welfare, 589 F.2d 365 (8th Cir. 1978) (complete deference to physician's conclusion abdicates ALJ's decision-making power). In relevant part, the district court order provides that:

[I]n assessing the RFC of younger individuals, substantial weight shall be accorded information provided by treating sources (particularly in the case of chronic mental patients), caution shall be exercised in relying upon information or conclusions of nonexamining physicians, or upon physicians who have examined the claimant only once, and treating sources shall be permitted an opportunity to review and comment on information or opinions advanced by non-treating sources.

554 F.Supp. at 168. However, this court often has recognized the value of opinions of treating sources, as well as the limitations of information or conclusions of non-treating sources. See, e.g., McGhee v. Harris, 683 F.2d 256, 259 (8th Cir.1982); Hancock v. Secretary of Health, Education & Welfare, 603 F.2d 739, 740 (8th Cir.1979) (and cases cited therein). The district court order herein does not mandate that the treating physician's report be determinative; to the contrary, it merely affords due consideration of highly relevant evidence. See Woodard v. Schweiker, 668 F.2d 370 (8th Cir. 1981). Consequently, the Secretary's delegated authority remains intact.