Kenneth ORLANDO, Plaintiff-Appellant,

v.

Margaret HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 84–2283.

United States Court of Appeals, Seventh Circuit.

Argued June 10, 1985.

Decided Nov. 5, 1985.

As Corrected Nov. 5, 1985.

---

Deborah Spector, Chicago, Ill., for plaintiff-appellant.

Rosemary Rodriguez, Health & Human Services, Chicago, Ill., for defendant-appellee.

Before COFFEY, EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.[*]

COFFEY, Circuit Judge.

Kenneth Orlando appeals the district court's judgment upholding the Secretary of Health and Human Services' denial of his application for Social Security benefits. We affirm.

### I.

The claimant, a 34 year-old Illinois resident with a twelfth grade education and a vocational background of employment as a janitor and as an assembler of rollaway beds, applied for disability benefits alleging that he was disabled because of scoliosis (abnormal curvature of the spine), mental impairment and hearing problems. Orlando submitted medical records revealing that he has congenital scoliosis and underwent two spinal fusions at the age of 14. Orlando was examined by a Dr. Kuang Chen, a consulting internist, who reported to the Secretary that there was a normal range of motion in Orlando's cervical spine and his lumbosacral spine was convexed to the left side with a limited range of motion. Dr. Chen stated that Orlando's ability to walk on his heels and toes was poor and that, although Orlando had a limping gait, an ambulatory aid was not required. Additionally, Dr. Chen found that Orlando could not hear without his hearing aid but was able to hear ordinary conversation at a six foot distance with his hearing aid.[1] Dr. Chen concluded that Orlando had "a limited functional incapacity."

Orlando's treating physician, Dr. S. Ali, submitted a Spinal Disorders Report to the Secretary diagnosing Orlando as having,

"Scoliosis-the whole spine; vascular and psychogenic headache; and right-sided weakness which resolved." Dr. Ali noted a decreased range of motion of the cervical and lumbosacral spine, mild paravertebral muscle spasm with no evidence of root compression.

Two Physical Evaluations were conducted by consultative physicians. One report, stating that Orlando could climb and bend occasionally, could stoop and operate foot controls frequently, and concluded that Orlando had the capacity to perform light work. The second report also found that Orlando could climb and bend occasionally, could stoop and operate foot controls frequently, and concluded that Orlando was capable of medium rather than light work. In addition, Orlando was examined by two psychiatrists and a psychologist. Dr. Waldman, a psychiatrist, observed that Orlando related he had been depressed for the past six months due to the loss of his possessions and cats. Orlando informed Dr. Waldman that since childhood he had heard voices giving him advice and instructions on how to behave. Dr. Waldman reported that Orlando, "presents himself with a flat affect, inappropriate rapport, lack of comprehension of any sophisticated word, oddity of speech and thought, depression for the past six months." Dr. Waldman's diagnosis was: "Axis I: 1. Adjustment Disorder with Depressed Mood and 2. Borderline Mental Functioning. Axis II: Schizotypal Personality Disorder. Axis III: Headaches, Hearing loss."

Dr. Howard Wolin, the second psychiatrist, reported that Orlando was, "oriented in all spheres with no apparent impairment of his capacity of attention and concentration ... [and that] there was no overt evidence of any psychotic process." Orlando also informed Dr. Wolin that he heard voices in the past, but had not heard them in the last six months. Dr. Wolin diag-

---

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

[1] Orlando's hearing was also tested by a Doctor A. Schultz who reported that Orlando is "able to perform ordinary activities within the customary hearing range" while wearing a hearing aid. On appeal, Orlando concedes that his hearing is corrected by the hearing aid.

nosed the claimant as having, "a mild to moderate degree of mental retardation, most probably mild, and/or a learning disability...." Wolin stated that Orlando is a "very withdrawn isolated man who stays within his house to protect himself from what he fears will be responses of a harsh sort from a hostile world." Dr. Wolin concluded, "There is a mild depression in him which goes along with a suicidal affect, but I do not believe he is suicidal at the moment."

Finally, the claimant's I.Q. was tested by a Dr. George Gentry, a clinical psychologist. Dr. Gentry administered the Wechsler Adult Intelligence Scale and found that Orlando had a Verbal I.Q. of 75, a Performance I.Q. of 90, and a Full Scale I.Q. of 80. Dr. Gentry reported that the "[f]ifteen point difference between Verbal and Performance I.Q.'s is significant and suggests pathology, although just what kind is not clear at this point" and recommended a thorough neuropsychological evaluation to "help pin this down."

After hearing the testimony of Orlando and of his social worker and examining the evidence, the administrative law judge found that Orlando is mildly depressed and has a history of scoliosis and a mild hearing impairment in his left ear. The administrative law judge determined that these impairments prevented him from performing, "jobs requiring heavy lifting or involving above average analytical ability, the performance of complex tasks or contact with the public in highly pressurized situations." The administrative law judge ascertained that the claimant's past relevant work as a janitor did not require lifting in excess of 20 pounds and required only the ability to perform unskilled tasks with minimal contact with the public and co-workers. Noting that Orlando's pain is not severe enough to prevent him from performing light work, the administrative law judge found that Orlando retains the Residual Functional Capacity ("RFC")[2] to perform his prior work as a janitor and concluded that Orlando was not disabled.[3] On appeal, Orlando argues that the administrative law judge's decision is not supported by substantial evidence. Additionally, Orlando contends that the preliminary injunction granted in *Mental Health Ass'n. of Minn. v. Schweiker*, 554 F.Supp. 157 (D.Minn.1982) *aff'd. in relevant part sub nom. Mental Health Ass'n. of Minn. v. Heckler*, 720 F.2d 965 (8th Cir.1983) compels us to remand this case to the Secretary for a redetermination of the issue of whether he could return to his past relevant work as a janitor.

## II.

### A. Sufficiency of the Evidence

■ Orlando argues that the administrative law judge's decision is not supported by substantial evidence because he failed to include evaluations of Orlando's physical and mental impairments and his complaint of severe, disabling pain in the "Findings" section of the opinion. Orlando contends that if the administrative law judge had addressed his mental impairments in his Findings, he would have been forced to conclude that Orlando was disabled because his mental condition equals the regulatory description of a disabling mental im-

---

2. A claimant's Residual Functional Capacity is what he can do despite his limitations. 20 C.F.R. Sections 404.1545(a); 416.945(a) (1983).

3. "Social Security regulations proscribe a sequential inquiry to be followed in determining whether a claimant is disabled. The following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment 'severe?' (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step, or in steps 3 and 5, to a finding that the claimant is disabled. A negative answer, at any point other than step 3, stops inquiry and leads to a determination that the claimant is not disabled."
*Taylor v. Schweiker*, 739 F.2d 1240, 1241 n. 1 (7th Cir.1984). Because the administrative law judge found that Orlando is able to return to his former occupation as a janitor, his sequential evaluation of Orlando's claim terminated at step 4.

pairment in 20 C.F.R. Subsection P, Appendix 1, Section 12.00. Alternatively, Orlando asserts that the record fails to contain adequate information about his past employment as a janitor to support a determination that he could return to this work.[4] Judicial review of final decisions of the Secretary is governed by Section 205(g) of the Social Security Act, 42 U.S.C.Sec. 405(g). We must uphold the Secretary's factual determinations if they are supported by substantial evidence based on the record as a whole. *Davis v. Califano,* 603 F.2d 618, 625 (7th Cir.1979). Substantial evidence is that which "a reasonable mind might accept as adequate to support the conclusion." *Taylor v. Schweiker,* 739 F.2d 1240, 1241 (7th Cir.1984). "If the record contains such support, we must affirm unless there has been an error of law." *Id.* (citations omitted).

■ Our court has emphasized that the administrative law judge's decision in disability cases must be "based on consideration of all relevant evidence and the reasons for his conclusions must be stated in a manner sufficient to permit an informed review." *Garfield v. Schweiker,* 732 F.2d 605, 610 (7th Cir.1984).

"While it is often impracticable and fruitless for every document to be discussed separately, an administrative law judge may not select only the evidence that favors his ultimate conclusion. His written decision should contain, and his ultimate determination must be based upon, all of the relevant evidence in the record."

*Id.* at 609 (citations omitted). A written evaluation of every piece of testimony and submitted evidence is not required; however, the administrative law judge must articulate at some minimal level his analysis of the evidence in "cases in which considerable evidence is presented to counter the agency's position." *Zblewski v. Schweiker,* 732 F.2d 75, 79 (7th Cir.1984). *See also Stephens v. Heckler,* 766 F.2d 284, 287–88 (7th Cir.1985); *Look v. Heckler,* 775

F.2d 192 (7th Cir.1985). To reject the claimant's testimony about his or her physical condition, the administrative law judge must specifically conclude that the claimant's testimony is not credible. *Zblewski,* 732 F.2d at 79. Moreover, to determine that a claimant is unable to return to his former work, the administrative law judge must compare the demands of that work with the claimant's existing physical abilities. *Strittmatter v. Schweiker,* 729 F.2d 507, 509 (7th Cir.1984). The purpose of these rules is to ensure that the administrative law judge has, in fact, considered all of the relevant evidence and made the required determinations and, further, to facilitate meaningful appellate review. *Zalewski v. Heckler,* 760 F.2d 160, 166 (7th Cir. 1985).

■ Initially we note that none of these cases require the administrative law judge to recite his determinations and supporting reasoning in the Findings rather than the discussion section of his opinion. Moreover, Orlando has not explained, and we fail to understand, why the administrative law judge's reasoning and determination must appear in the Findings rather than the discussion section. We agree it would be more helpful if the administrative law judge's determination's and supporting reasoning also appeared in the Findings section, but refuse to impose such a needless formality. Accordingly, we examine the administrative law judge's opinion as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his decisions.

■ A review of the administrative law judge's decision reveals that he summarized the medical evidence and noted, "The claimant's spinal fusion is related to idiopathic scoliosis and that his back condition has been essentially the same for 20 years. During much of that period the claimant was able to work and perform at the substantial gainful activity level." The admin-

---

4. Although Orlando claimed multiple impairments, he fails to argue that the combination of his impairments is medically equivalent to a listed impairment.

istrative law judge rejected Orlando's complaint of severe disabling pain because he,

"did not appear to be in any distress while at the hearing. There were no indications of interference with his ability to concentrate or respond as a result of pain. The claimant has maintained adequate weight in relation to his height and he has not suffered the severe weight loss which usually accompanies unrelenting pain. The claimant does not regularly take strong pain medication and in the last few years he has not had any regular treatment for his back condition or any other problem which could cause severe pain. The claimant's description of his daily activities indicates that he engages in a wide variety of sedentary and light household and recreational activities in spite of his discomfort and he should be able to perform light work as well."

Based upon our review of the administrative law judge's decision, we hold that Orlando's contention that the administrative law judge disregarded evidence of his back impairment and his testimony regarding pain is meritless.

We now turn to Orlando's contention that a fair evaluation of the evidence compels the conclusion that his mental impairment rendered him disabled. 20 C.F.R.Sec. P, Appendix 1, Sec. 12.03 provides:

"12.03 *Functional Psychotic Disorders* (mood disorders, schizophrenia, paranoid states). With both A and B:

A. Manifested persistence of one or more of the following clinical signs:

1. Depression (or elation); or

2. Agitation; or

3. Psychomotor disturbances; or

4. Hallucinations or delusions; or

5. Autistic or other regressive behavior; or

6. Inappropriateness of affect; or

7. Illogical association of ideas;

B. Resulting persistence of marked restriction of daily activities and construc-

tion of interests and seriously impaired ability to relate to other people."

The regulations further explain:

"Diagnosis alone is insufficient as a basis for evaluation of the severity of mental impairment(s). Accordingly, the criteria for severity under mental disorders are arranged in four comprehensive groups; chronic brain syndromes (see 12.02), functional (nonorganic) psychotic disorders (see 12.03), functional nonpsychotic disorders (see 12.04), and mental retardation (see 12.05). Each category consists of a set of clinical findings, one or more of which must be met, and a set of functional restrictions, *all of which must be met.* The functional restrictions are to be interpreted in the light of the extent to which they are imposed by psychopathology."

*Id.* at 12.00A. Thus, to qualify as disabled under Section 12.03, a claimant must prove: (1) that he has a manifested persistence of one or more of seven clinical signs *and;* (2) resulting persistence of marked restriction of daily activities; *and,* (3) resulting constriction of interest; *and* (4) resulting persistence of a seriously impaired ability to relate to other people.

An examination of the administrative law judge's opinion reveals that he summarized the psychiatric evaluations of Doctors Waldman, Wolin and Gentry. In his evaluation of this evidence, the administrative law judge stated, "there is nothing in the record to suggest that the claimant had a mental impairment which significantly limited his ability to perform basic work-related functions for 12 continuous months. The claimant's depression seems to have been situational and of brief duration." Additionally, the administrative law judge determined that Orlando's IQ test scores, "indicate that the claimant would have some difficulty processing verbal and numerical data but he could perform simple unskilled tasks and his mental and emotional problems clearly do not meet or equal the level of severity required by the Listings." After reviewing the reports of Drs. Waldman, Wolin and Gentry, we agree

with the administrative law judge's determination that, "there is nothing in the record to suggest that the claimant had a mental impairment which significantly limited his ability to perform basic work-related functions for 12 continuous months." Although Orlando reported auditory hallucinations, the record is devoid of evidence that the hallucinations caused a marked restriction of daily activities, a constriction of interest, or a seriously impaired ability to relate to other people. To the contrary, Orlando informed Doctors Wolin and Waldman that he stays at home because he is afraid that he will be rejected and "put down," not because of the hallucinations. Furthermore, Orlando testified at the hearing that he lost his prior jobs because his car was destroyed in a fire, because he was accused of shop-lifting, and because he "didn't get along with the boss" and was "too friendly with the women there." Moreover, Orlando also informed the administrative law judge that he works puzzles, paints furniture, plays with his cats, performs normal household chores, watches television, uses public transportation, goes out twice a day to walk, attends church every two weeks, has roomed with a good friend for the past three years, and recently traveled by car to North Carolina. Thus, there is substantial evidence in the record to support the administrative law judge's finding that Orlando failed to establish a "marked restriction of daily activities and constriction of interest and seriously impaired ability to relate to other people" required by Section 12.03. After reviewing the administrative law judge's decision and the supporting evidence, we hold that the administrative law judge properly found that Orlando's mental impairment did not meet or equal Section 12.03.

We next consider Orlando's alternative argument that there is "nothing in the record which would permit the ALJ to reach any informed conclusion about the demands of the claimant's past work" and that the record lacked "factual support for the ALJ's finding that Orlando's past work did not involve contact with the public, or

co-workers or above average pressure." Social Security Ruling 82–61 provides in pertinent part:

"Under sections 404.1520(e) and 416.-920(e) of the regulations, a claimant will be found to be "not disabled" when it is determined that he or she retains the [residual functional capacity] to perform:

1. The actual functional demands in job duties of a particular past relevant job; *or*

2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy."

(emphasis in original). To make this decision, the administrative law judge must ascertain the demands of the claimant's former work and compare the demands with his present capacity. *Strittmatter,* 729 F.2d at 509. Orlando described his janitorial duties in his application for benefits as, "used a mop and broom. Used a vacuum. Cleaned toilet bowls, mirrors. Never used big machines because of my back and legs." Orlando reported that his duties involved walking six hours a day, standing four hours, sitting two hours, bending frequently and reaching occasionally. Finally, Orlando stated that the job required him to lift a half gallon bucket of water twice a day. After reviewing this evidence, we hold that Orlando's contention that there is "nothing in the record which would permit the ALJ to reach an informed conclusion about the demands of the claimant's past work" is patently frivolous. Moreover, we note that Orlando's objection to the administrative law judge's conclusion about the inter-personal contact and pressure involved in Orlando's past work as a janitor is to the factual basis of the conclusion rather than its accuracy. Contrary to Orlando's belief that the administrative law judge must find that the claimant is unable to return to his specific past relevant job, the administrative law judge was allowed to base his comparison on the functional demands and job duties of the occupation as generally required by employers throughout the national economy.

Social Security Ruling 82–61. We therefore hold that Orlando's contention that the administrative law judge was required to compare his residual functional capacity to the actual functional demands and job duties of his particular past relevant job is without merit.

### B. The Preliminary Injunction

In *Mental Health Ass'n of Minn. v. Schweiker*, 554 F.Supp. 157 (D.Minn.1982) *aff'd. in relevant part sub nom. Mental Health Ass'n. of Minn. v. Heckler*, 720 F.2d 965 (8th Cir.1983), social security claimants brought a class action seeking an injunction of the procedure used by the Secretary in disability determinations of the severely mentally ill in Region V of the Department of Health and Human Services (Minnesota, Wisconsin, Illinois, Indiana, Michigan and Ohio). The regulations governing disability determinations provide a five-step sequential evaluation process.

"First, the Secretary determines whether an individual is engaged in 'substantial gainful activity'; if so, benefits are denied. If not, the Secretary determines whether the claimant's medical condition or impairment is 'severe'; if found 'not severe,' benefits are denied. Third, the Secretary determines whether the claimant suffers from an impairment acknowledged to be so severe that the claimant is presumed to be incapable of pursuing any gainful activity. If so, then the claimant meets or equals the Listing of Impairments and benefits are awarded. However, if the claimant's impairment does not satisfy the Listing of Impairments, the fourth step requires the Secretary to determine whether the individual has a sufficient 'residual functional capacity' (RFC) to perform his former work. If so, benefits are denied. If an individual still has not been ruled ineligible for benefits, the fifth step requires the Secretary to take into account the additional considerations of age, education, and past work experience to determine whether the individual is capable of performing any other work available in the economy."

*Mental Health Ass'n. of Minn.*, 720 F.2d at 967–68 (citations omitted). The policy challenged by the plaintiffs in *Mental Health Ass'n. of Minn.* concerned the RFC determination made in the fourth step. The district court found:

"The policy prevalent in Region V was for state DDS agents to apply a *presumption* that those claimants whose mental impairments were not as severe as those in the Listing of Impairments retained a sufficient RFC to do at least unskilled work. The effect of this presumption was that mentally impaired claimants ruled ineligible for benefits under the third step were presumed ineligible under the subsequent steps, thereby bypassing the individual assessment required in the fourth level."

*Id.* at 968 (emphasis in original). The injunction forbids the officers of Region V of the Social Security Administration and its agents from, "drawing any conclusion regarding the extent of residual functional capacity (RFC) from the fact that the individual fails to meet or equal the Appendix Listing Sec. 12.00." *Mental Health Ass'n. of Minn.*, 554 F.Supp. at 168. Because Orlando is a resident of Region V, we must examine the administrative law judge's decision, issued after the preliminary injunction was granted, to determine whether he based his conclusion that Orlando had the residual functional capacity to return to his past relevant work on the fact that Orlando's mental impairment failed to meet or equal Appendix Listing Sec. 12.00.

Immediately after finding that Orlando's impairment did not meet or equal a listed impairment, the administrative law judge stated, "Of course, even though the claimant's impairments are not severe enough to warrant a finding of disability based on medical considerations alone, he may still be entitled to benefits if he is unable to perform his past relevant job or other jobs for which he is qualified." The administrative law judge not only evaluated Orlando's physical capabilities, but also compared Orlando's mental capacity to the demands of his past relevant work as a janitor:

"In addition, the claimant's mental and emotional problems prevent him from performing complex tasks or those requiring above average analytical ability. He is also unable to relate to others in situations involving above average pressure. However, the claimant has past relevant work experience as a janitor.... [H]is janitorial duties did not involve contact with the public or co-workers and the tasks involved were simple and repeated day-to-day. It would appear that the claimant retains the residual functional capacity in both exertional and non-exertional areas to perform his past relevant job as a janitor and regulations 404.1520(e) and 416.920(e) require that he be found 'not disabled'."

Based upon our review of the administrative law judge's decision, we hold that he did not apply the presumption enjoined in *Mental Health Ass'n. of Minn.,*—i.e. that an individual whose mental impairment is not as severe as those contained in the Listing of Impairments is capable of performing at least unskilled work. To the contrary, the administrative law judge, in fact, evaluated Orlando's claim under the fourth step of the sequential evaluation process as required in *Mental Health Ass'n. of Minn.* Because the administrative law judge followed the dictates of the *Mental Health* injunction, we need not remand this case to the Secretary for redetermination.

The decision of the district court is AFFIRMED.