989 F.2d 502
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Richard J. MENNENGA, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
[2] Defendant-Appellee.
 No. 91-3924.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 4, 1993.
Decided March 16, 1993.
 
 Before CUMMINGS, CUDAHY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Richard J. Mennenga appeals from a district court order upholding the denial of disability benefits for his alleged heart and back conditions, and a mental impairment stemming from anxiety.
 
 Background
 
 2
 In October 1987, plaintiff applied for disability insurance benefits. Plaintiff alleges he suffers from coronary artery disease, a back infirmity, and anxiety. In December 1988, the Board denied his claim. On July 12, 1989, a hearing was held. Plaintiff testified that he worked as a lathe operator for ten years, until he was laid off in 1982. He has not worked again since that time, except for his current job working four hours each month checking supplies for a retailer. He testified that he would "rather work in a factory, but I just--on account of my health, I guess I can't." Plaintiff also testified that in addition to experiencing intermittent pain in his chest, he has "kind of always had back trouble." He also stated: "I guess I kind of got everything wrong with me. I don't know."
 
 
 3
 On October 27, 1989, the Administrative Law Judge (ALJ) issued a decision finding that plaintiff was not disabled. Subsequently, the Secretary adopted the ALJ's findings and decision. The Appeals Council denied plaintiff's request for review. Plaintiff filed for judicial review of the Secretary's decision pursuant to 42 U.S.C. § 405(g). On November 22, 1991, the district court upheld the Secretary's denial of benefits. Plaintiff filed a timely appeal with this court.
 
 Discussion
 
 4
 The findings and decision of the Secretary must be upheld if they are supported by substantial evidence. Steward v. Bowen, 858 F.2d 1295 (7th Cir.1988); 42 U.S.C. § 405(g). "Substantial evidence" has been defined as "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Steward, 858 F.2d at 1297, quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 
 5
 Plaintiff maintains that his heart and back conditions prevent him from working. The medical evidence, however, offers substantial support for a finding to the contrary. In regard to the alleged back condition, X-ray findings point to "mild cervical and dorsal osteoarthritis." The ALJ could properly rely on the fact that the condition was "mild" ( see Walker v. Bowen, 834 F.2d 635, 641-42 (7th Cir.1987); Cheshier v. Bowen, 831 F.2d 687, 690 (7th Cir.1987)), and that plaintiff said he had "always had back trouble" ( see Orlando v. Heckler, 776 F.2d 209, 213 (7th Cir.1985)).
 
 
 6
 In regard to the heart condition, the ALJ found that plaintiff had "severe impairments of a history of tachycardia [rapid heartbeat] and atypical angina." No disability, however, resulted from the condition which would prevent plaintiff from performing light duty work. This conclusion is supported by the evidence.
 
 
 7
 Plaintiff testified that he helps with the housework, drives, does errands, and cooks. In May 1986, he reported to a doctor that his chest pain was irritated by stress, lifting and spicy food. In May 1987, however, plaintiff reported to a doctor that the chest pain was not associated with exertion, and occurred at night after going to bed. In August 1988, a physician noted that the chest pain did not occur very often and had "no relation to exercise." Instead, it occurred when he ate "the wrong foods."
 
 
 8
 In March 1987, plaintiff reported to a cardiologist, Dr. Wilson, that over several months he only experienced two or three episodes of rapid heart beat, and each episode lasted only a few minutes. (Similarly, a July 1987 physician's note indicates the chest pain occurred four times in one month and was always spontaneously relieved within five minutes.) Dr. Wilson opined that the chest discomfort was clinically atypical of angina, which could be confirmed by a MUGA scan. The following month, in April 1987, plaintiff underwent a MUGA scan which was normal, compelling the cardiologist to conclude that it was "unlikely recent symptoms of chest discomfort relate to coronary artery disease." Moreover, in 1986, when the tachycardia was first diagnosed, plaintiff was instructed by his physician that he could engage in "light activity."
 
 
 9
 Plaintiff argues, however, that the ALJ erroneously discounted his reports of chest pain despite the fact that the tachycardia was an objective medical condition which would explain the pain. The ALJ did not find that the reports of pain were incredible. Instead, the overall record, including plaintiff's testimony, indicated plaintiff simply did not suffer from debilitating pain.
 
 
 10
 Plaintiff also relies upon the 1989 note written by Dr. Styczynski, stating that plaintiff would sometimes experience heart arrythmia which would render him unable to work for two to six days. Dr. Styczynski, an internist, offers no foundation for his opinion. This is particularly troublesome since Dr. Styczynski referred plaintiff to a cardiologist, and in his extensive report, that specialist did not find plaintiff unable to work. Moreover, it is unclear whether the two to six day period would occur every six days, or every six months. The opinion also conflicts with plaintiff's own testimony saying that his chest discomfort occurred infrequently and lasted for only a few minutes.
 
 
 11
 Plaintiff argues that the ALJ failed to consider the combination of the various alleged impairments. There is no indication in the record that the ALJ mechanically separated the assorted ailments or ignored their combined effect. On the contrary, the ALJ specifically found that the medical evidence did not establish that plaintiff had "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4" (emphasis added).
 
 
 12
 Plaintiff also argues that "[t]he record is replete with telltale signs that [he] was experiencing psychological problems which required further investigation." He insists that the ALJ should have questioned plaintiff about the psychological problems and obtained the opinion of a qualified psychiatrist or psychologist.
 
 
 13
 The record contains a few references to plaintiff's depression. For example, in May 1982, the plaintiff's wife told a physician that plaintiff "has been quite anxious and nervous." In 1986, plaintiff reported having anxiety attacks, and drinking alcohol to "soothe nerves, extreme irritability and frustration." Plaintiff refused to seek counseling, and in June 1986, the doctor wrote: "nerves are better now." In July 1987, plaintiff again complained of stress, and again refused a psychiatric consult.
 
 
 14
 These references, however, would not necessarily compel the ALJ to conclude that plaintiff might suffer from anxiety or depression which incapacitated him or rendered him unable to perform in the "functional areas deemed essential to work." 20 C.F.R. Pt. 404, Subpt. P, App. 1, sec. 12.00.[3] See also Howell v. Sullivan, 950 F.2d 343, 349 (7th Cir.1991) (ALJ did not err in not ordering a consultative examination for mental impairment). Cf. Kimbrough v. Secretary of Health and Human Services, 801 F.2d 794, 797 (6th Cir.1986) (error to not require psychological examination where there was evidence that claimant shot himself after hearing, was a chronic alcoholic, had trouble eating and sleeping, had little social interaction and suffered a marked weight loss).
 
 
 15
 Notably, the fact that a person experienced depression or anxiety at any point during the years of being unemployed does not necessarily require the ALJ to find evidence of a mental disorder. Instead, the ALJ is only concerned with whether there is any evidence of a "mental disorder[ ] relevant to [the] ability to work." 20 CFR § 404.1520(a)(2) (April 1992 ed.). Moreover, the ALJ was presented with medical records showing that the few times it was suggested that plaintiff seek mental health care, plaintiff refused. See 20 CFR § 404.1530(a) (a pre-requisite to obtaining benefits is to "follow treatment prescribed by your physician if this treatment can restore your ability to work").
 
 
 16
 We are unpersuaded that in this case the ALJ was required, pursuant to 42 U.S.C. § 421(h), to obtain the opinion of a mental health professional. Section 421(h) only applies "where there is evidence of a mental impairment." 42 U.S.C. § 421(h). Moreover, while the ALJ is given the authority to send a claimant for a medical consultation, he is not required to do so. 20 C.F.R. § 404.1517(a). In this case, raising the possibility of mental impairment seems to be little more than an afterthought.
 
 
 17
 We conclude that substantial evidence supports the ALJ's findings and decision to deny disability benefits to plaintiff.
 
 
 18
 Accordingly, the decision of the district court upholding the denial of benefits is AFFIRMED.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [2]
 Pursuant to Fed.R.App.P. 43(c)(1), Donna E. Shalala has been substituted for Louis W. Sullivan
 
 
 [3]
 The functional areas listed include restrictions of (1) activities of daily living, such as cleaning, shopping, cooking, paying bills, caring for one's hygiene; (2) social functioning, such as the ability to get along with others as opposed to a history of firings, or fear of strangers; (3) concentration, persistence, or pace, i.e., ability to complete household tasks or locate phone numbers; and (4) ability to tolerate stress at work
 Plaintiff never indicated, either in his testimony before the ALJ or in his decade of hospital and doctor visits, that these types of mental functional areas were impaired.